839 F.2d 1426
 Jeffery Joseph DAUGHERTY, Petitioner-Appellant,
v.
Richard L. DUGGER, Secretary, Florida Department of
Corrections, and Robert A. Butterworth, Attorney
General, State of Florida, Respondents-Appellees.
 No. 87-3707.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 12, 1988.
Rehearing and Rehearing En Banc Denied April 14, 1988.
 
 John P. Dean, Donovan, Leisure, Newton & Irvine, Washington, D.C., for petitioner-appellant.
 Richard Martell, Asst. Atty. Gen. of Florida, Daytona Beach, Fla., for respondents-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before RONEY, Chief Judge, HILL and HATCHETT, Circuit Judges.
 PER CURIAM:
 
 
 1
 Jeffery Joseph Daugherty, the appellant, appeals the district court's denial of his petition for writ of habeas corpus. Challenging only his sentence, Daugherty contends that: (1) his lawyer's failure to object to a jury instruction and to introduce expert psychiatric testimony constituted ineffective assistance of counsel; (2) the district court failed to consider evidence of nonstatutory mitigating circumstances; and (3) the prosecution exercised its discretion arbitrarily in seeking the death penalty. We affirm.
 
 FACTS
 
 2
 Jeffery Joseph Daugherty and his girl friend, Bonnie Heath, traveled from Michigan to Florida in January, 1976. During the trip, Daugherty committed a series of murders and armed robberies. In February, 1976, he robbed a convenience store killing an attendant and seriously wounding the attendant's husband.
 
 
 3
 In March, in Melbourne, Florida, Daugherty and Heath picked up Lavonne Sailer who was hitchhiking. After taking her to an isolated area, Daugherty ordered Sailer to get out of the automobile. Daugherty robbed Sailer of $15, then shot her five times in the back of the head at close range with a 22 caliber pistol. For the next twenty days, Daugherty and Heath committed a series of murders and robberies. Prior to his conviction and sentence for the Sailer murder, Daugherty received sentences for these additional crimes.
 
 PROCEEDINGS
 
 4
 Daugherty pleaded guilty to the first-degree murder, robbery, and kidnapping of Sailer. The court empaneled a jury to recommend a sentence for the murder. The state presented evidence concerning the details of the murder and of convictions Daugherty received for other murders, robberies, and assaults committed during the crime spree. The jury recommended a sentence of death. The judge imposed the death sentence for the murder and consecutive life sentences for the robbery and kidnapping. In support of the death sentence, the state trial court found two statutory aggravating circumstances and no statutory or nonstatutory mitigating circumstances. As aggravating circumstances, the trial court found Sailer's murder "was committed for pecuniary gain" and that Daugherty "was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person." Fla.Stat. Sec. 921.141(5)(b) and (f). The trial court listed the previous convictions it relied upon:
 
 
 5
 (1) First degree murder conviction for the Flagler County, Florida killing of a woman in her sixties. Daugherty shot her in the left shoulder and right temple while robbing her.
 
 
 6
 (2) Conviction for the stabbing murder of a woman committed while Daugherty robbed her place of business in Volusia County, Florida.
 
 
 7
 (3) While robbing a gas station Daugherty shot the young attendant twice in the side, once in the bridge of the nose, and once under the chin. He received convictions for criminal homicide, criminal conspiracy, robbery and crimes committed with firearms.
 
 
 8
 (4) In Altoona, Pennsylvania, Daugherty robbed a music store clerk with a firearm, assaulting the woman until she lost consciousness. He received convictions for robbery, aggravated assault, simple assault and crimes committed with firearms.
 
 
 9
 (5) Daugherty received additional convictions in Pennsylvania for aggravated and simple assault, burglary, robbery and crimes committed with firearms.
 
 
 10
 (6) In Virginia Daugherty received convictions for armed robbery and using a firearm while committing a felony.
 
 
 11
 (7) Daugherty killed a convenience store clerk by shooting her in the body and head. He received convictions for criminal homicide, criminal conspiracy, and robbery.
 
 
 12
 At the sentencing hearing, Daugherty testified about the crimes he had committed, his remorse for the murders, his childhood, and his religious conversion. A prison chaplain testified to the sincerity of Daugherty's religious beliefs. The jury unanimously recommended a sentence of death, which the trial court imposed and which, on direct appeal, the Florida Supreme Court affirmed. The United States Supreme Court denied Daugherty's petition for writ of certiorari. The Florida Supreme Court then denied Daugherty's petition for writ of habeas corpus without requiring a response from the state. Daugherty sought review of this denial through another petition for writ of certiorari. The United States Supreme Court also denied relief.
 
 
 13
 Daugherty then filed a motion for post-conviction relief in the Circuit Court for Brevard County, Florida. After an evidentiary hearing, the court denied the motion, and the Florida Supreme Court subsequently affirmed. On August 20, 1987, Daugherty filed his third petition for writ of certiorari seeking review of this latest decision of the Florida Supreme Court. Then on August 24, 1987, the Governor of Florida signed a death warrant. Daugherty's execution was scheduled for October 15, 1987. In mid-September, 1987, Daugherty unsuccessfully moved the Florida Supreme Court for stay of execution. Daugherty then filed a petition for writ of habeas corpus in the federal district court. The district court denied his petition. On October 13, 1987, this court granted Daugherty an indefinite stay of execution to allow review of the district court's order.
 
 ISSUES
 
 14
 Daugherty presents four issues on appeal. First, he contends that he received ineffective assistance of counsel at the sentencing hearing because his lawyer failed to object to an unconstitutional instruction to the jury defining one of the statutory aggravating circumstances. Second, he contends that he received ineffective assistance of counsel when his lawyer failed to arrange for a psychological evaluation and failed to introduce expert psychiatric testimony at the hearing. Third, he contends that the district court failed to consider nonstatutory mitigating circumstances. Fourth, he contends that the government's request for the death penalty amounted to an arbitrary exercise of prosecutorial discretion.
 
 DISCUSSION
 
 15
 1. Ineffective Assistance: The Sentencing Instruction
 
 
 16
 Daugherty contends he received ineffective assistance of counsel when his lawyer failed to object to the sentencing court's jury instruction defining one of the statutory aggravating circumstances. The statute expresses the circumstance as follows: "The capital felony was especially heinous, atrocious, or cruel." Fla.Stat. Sec. 921.141(5)(h). The trial court defined for the jury "heinous, atrocious, or cruel" as follows:
 
 
 17
 Heinous means extremely wicket [sic] or shockingly evil. Atrocious means outrageously wicked and foul. Cruel means designed to inflict a high degree of pain. Utter indifference to or adjoined [sic] of the suffering of others, pitiless.[1]
 
 
 18
 Daugherty contends that from the court's instruction, the jury might have determined the killing, by five gunshot wounds to the head, constituted a heinous, atrocious, or cruel murder despite evidence that the first gunshot would have rendered the victim unconscious; therefore, she was unable to suffer during the infliction of the other four gunshots.
 
 
 19
 To prove ineffective assistance of counsel, Daugherty must show that the instruction was improper, that a reasonably competent attorney would have objected to the instruction, and the failure to object was prejudicial. See Strickland v. Washington, 466 U.S. 668, 686-87, 104 S.Ct. 2052, 2063-64, 80 L.Ed.2d 674, 693 (1984).
 
 
 20
 Because our task is not to grade counsel's performance, but to determine whether counsel's performance impaired the defense, we resolve this issue solely under the prejudice prong of Strickland, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. To determine whether Daugherty was prejudiced by the instruction, we assume that it was unconstitutionally vague, that reasonably effective counsel would have objected to the instruction, that the jury did in fact find the murder "especially heinous, atrocious, or cruel," and that had the jury been properly instructed, it would not have found the murder "especially heinous, atrocious, or cruel." Given these assumptions, the narrow issue becomes whether the evidence of statutory aggravating circumstances, other than of an "especially heinous, atrocious, or cruel" murder, so clearly outweighs the evidence of statutory and nonstatutory mitigating circumstances that no reasonable probability exists that the sentencing jury would not have recommended a sentence of death had it been properly instructed. Strickland, 466 U.S. at 695, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Strickland also involved a Florida death row inmate's federal habeas corpus petition challenging the effectiveness of his counsel at the sentencing proceeding, which followed the inmate's plea of guilty to murder. As stated in Strickland,
 
 
 21
 when a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
 
 
 22
 Strickland, 466 U.S. at 695, 104 S.Ct. 2069, 80 L.Ed.2d at 698. The Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
 
 
 23
 In determining the probable effect of any error on the jury's recommendation, we must weigh the evidence of those aggravating and mitigating circumstances not the subject of the alleged erroneous instruction. The balance of aggravating and mitigating circumstances turns as much on the weight of evidence supporting each circumstance as on the number of circumstances supported. As stated by the Supreme Court:
 
 
 24
 A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.
 
 
 25
 Strickland, 466 U.S. at 695-96, 104 S.Ct. at 2069, 80 L.Ed.2d at 698-99. The evidence strongly supported three statutory aggravating circumstances listed in Florida Statute Sec. 921.141(5):
 
 
 26
 (b) The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person.
 
 
 27
 ....
 
 
 28
 (d) The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery ... [or] kidnapping....
 
 
 29
 ....
 
 
 30
 (f) The capital felony was committed for pecuniary gain.
 
 
 31
 Evidence also supported a fourth aggravating circumstance:
 
 
 32
 (i) The capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
 
 
 33
 The evidence of circumstance (b) included convictions for four murders, five robberies, four firearms violations, and two aggravated assaults. The sentencing court expressly found this circumstance present. That finding is entitled to a presumption of correctness under 28 U.S.C. Sec. 2254(d). With respect to circumstances (d), (f), and (i), Daugherty pleaded guilty to the kidnapping and robbery of Sailer in addition to her murder. This evidence amply supports the existence of factors (d), a felony committed while the defendant was engaged in the commission of, or flight from, any robbery or kidnapping, and (f), a capital felony committed for pecuniary gain. The sentencing court also expressly found circumstance (f). The fact that the homicide was committed after the kidnapping and robbery of Sailer, and after Daugherty debated with Heath the need to kill Sailer, in combination with the execution-style killing of Sailer, provides substantial support for circumstance (i), a cold, premeditated homicide.
 
 
 34
 Daugherty attempted to prove statutory mitigating factors through testimony that he had "acted ... under the substantial domination of another person." Fla.Stat. Sec. 921.141(6)(e). Bonnie Heath was more than twice the age of Daugherty at the time of the Sailer killing. He introduced some evidence tending to show that she encouraged his criminal activities, including the Sailer killing. Daugherty claimed his young age, 20, mitigated his crime. Fla.Stat. Sec. 921.141(6)(g). He also suggested his frequent headaches were an extreme mental or emotional disturbance which influenced his conduct. Fla.Stat. Sec. 941.141(6)(b). The sentencing court, however, found he was not suffering from a headache at the time of the Sailer killing. The evidence of nonstatutory mitigating circumstances included Daugherty's testimony about his childhood, unstable family life, religious conversion, suicide attempt, remorse for the murders, and the fact that at the time of sentencing, due to other convictions, he would not be eligible for parole for 107 1/2 years. Nevertheless, the sentencing court found Daugherty established no mitigating factors. As we are required to do, we accord this finding a presumption of correctness under 28 U.S.C. Sec. 2254(d).
 
 
 35
 Balancing the aggravating against the mitigating circumstances, we determine that no reasonable probability exists that the jury would have recommended a sentence other than death had it been properly instructed. This determination is based primarily on our sense that the extraordinary violence of Daugherty's twenty-day crime spree which resulted in convictions for four murders and numerous robberies, assaults, and firearms violations must have weighed heavily in the sentencing jury's decision.
 
 
 36
 Indeed, the sentencing statute authorizes the finding of an aggravating circumstance based on a single conviction for a felony involving the mere threat of violence to a person. The proof of Daugherty's conviction for a dozen felonies, including four murders, suggests the great weight which the jury probably attached to this circumstance, above all others.
 
 
 37
 In addition, the evidence supporting the aggravating circumstances contains indicia of credibility not appearing in the evidence of mitigating circumstances. For example, the prior convictions are matters of public record based on judicial determinations. Daugherty's confession to the robbery and kidnapping of Sailer prior to her murder are statements against interest which Daugherty would have little motive to falsify. The credibility of Daugherty's testimony, however, as to his remorse for the killings, his religious conversion, and the domination by Bonnie Heath is somewhat tainted by Daugherty's motive to save his own life in the sentencing proceeding.
 
 
 38
 Assuming, without deciding, that the court gave the jury an unconstitutional instruction to which effective counsel would have objected, we hold that no reasonable probability exists that the jury would have recommended a sentence other than death had it been properly instructed. Our confidence in the outcome of the sentencing proceeding has not been undermined by the instruction as given. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
 
 
 39
 Daugherty cites Florida cases for the proposition that where the sentencing jury receives an improper instruction on an aggravating circumstance, the sentencing process is impermissibly tainted, requiring a new one. Daugherty, however, grounds his petition on ineffective assistance of counsel, which under Strickland requires that he show prejudice; he has failed to do so.
 
 
 40
 2. Ineffective Assistance: Psychiatric Evidence
 
 
 41
 Daugherty further contends he received ineffective assistance of counsel when his lawyer failed to obtain for him a psychiatric examination and to present expert testimony of the examination results. Daugherty's lawyer conceded he could have presented favorable psychiatric testimony. Again, in order to demonstrate ineffective assistance of counsel, Daugherty must "show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Second, Daugherty "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
 
 
 42
 Regarding the first prong of Strickland, Daugherty argues that his lawyer failed to exercise reasonable professional judgment in deciding not to arrange a psychiatric or psychological evaluation of him. Where, however, the defendant himself gives counsel reason to believe that further investigation of the defendant's mental condition would be useless or even harmful to the defense, then the decision not to further investigate is reasonable. Strickland, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696. Daugherty's trial lawyer discussed with one psychiatrist and with one psychologist Daugherty's childhood accidents, use of quaaludes, and his relationship with Bonnie Heath. Daugherty's lawyer obtained much of this information from Daugherty himself. Based on this investigation, the lawyer determined that he could not obtain psychological testimony adequate to support his theory that Bonnie Heath dominated Daugherty. Consequently, Daugherty's lawyer feared the negative inference the jury might draw: that Daugherty was indeed responsible for his own violent actions. The lawyer also believed that if he called experts, the state would call its own experts who would impeach Daugherty's experts with Daugherty's previous statements suggesting he did not act under the domination of Bonnie Heath. The lawyer, therefore, decided to present the domination theory through Daugherty's testimony and the testimony of state witnesses, such as Raymond Daugherty.
 
 
 43
 Daugherty argues that the inconsistent statements which his lawyer feared would be used to impeach psychology experts were also available to impeach him. Because the lawyer had Daugherty testify at his own sentencing hearing, thereby subjecting him to credibility attacks, does not mean the lawyer acted unreasonably in refusing to call additional expert witnesses to face the same attack. It is not unreasonable for a lawyer to determine that a defendant's testimony on his own behalf will be at least as favorable as a somewhat more objective expert testifying on behalf of the defendant. The lawyer's decision to introduce evidence of Daugherty's mental condition through the testimony of family members and acquaintances familiar with Daugherty, rather than through experts, was a sufficiently well-informed, strategic decision as to assure Daugherty of effective assistance of counsel under the sixth amendment. Foster v. Dugger, 823 F.2d 402, 407-08 (11th Cir.1987); see Elledge v. Dugger, 823 F.2d 1439, 1444-45 (11th Cir.1987) (counsel's failure to make any effort to locate an expert or obtain testimony of family members familiar with the defendant's background held ineffective assistance).
 
 
 44
 Under the second prong of Strickland, Daugherty contends that the lawyer's failure to introduce expert testimony in mitigation of his crime prejudiced him. Prejudice exists if a reasonable investigation would have revealed an expert who would testify favorably for Daugherty and whose testimony would create a reasonable probability that the jury would have recommended life, rather than death. Elledge, 823 F.2d at 1446-47; Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In a state collateral attack proceeding five years after the jury recommended death, Daugherty's lawyer at that time introduced a psychologist's testimony that Daugherty murdered Sailer while under the domination of Bonnie Heath, and that Daugherty's age should be considered an additional statutory mitigating circumstance. The mere fact that an expert who would give favorable testimony for Daugherty was discovered five years after this sentencing proceeding is not sufficient to prove that a reasonable investigation at the time of sentencing would have produced the same expert or another expert willing to give the same testimony. Elledge, 823 F.2d at 1446.
 
 
 45
 Daugherty attempts to distinguish Elledge on the ground that the defendant introduced no evidence that favorable expert testimony could have been obtained at the time of his sentencing. Daugherty asserts that in this case, experts were available to testify that he acted under the domination of Bonnie Heath and that the absence of that testimony prejudiced him. Again, we note that the testimony of these experts would have been subject to rebuttal by Daugherty's prior contradictory statements. Furthermore, the lawyer attempted to prove the domination theory through testimony of Daugherty and state witnesses, including Daugherty's uncle.
 
 
 46
 Finally, given the severity of the aggravating circumstances in this case, we cannot conclude that the absence of psychiatric testimony in the sentencing phase creates a reasonable probability that the jury would have recommended life. Conceivably, psychiatric evidence of Heath's domination of Daugherty could weaken the aggravating circumstance of the numerous violent felonies he committed with her on a twenty-day crime spree. Because the evidence of domination was in conflict, we do not believe the great weight likely given by the jury to Daugherty's prior convictions would have been significantly undermined. Accordingly, we hold that the lawyer's decision not to introduce expert psychiatric testimony at the sentencing hearing did not prejudice Daugherty. Strickland, 466 U.S. at 694-95, 104 S.Ct. at 2068-69, 80 L.Ed.2d at 698; Elledge, 823 F.2d at 1447-48.
 
 3. Nonstatutory Mitigating Circumstances
 
 47
 Daugherty's third contention is that the trial court failed to consider nonstatutory mitigating circumstances in reviewing the jury's recommendation of death. Daugherty bases this argument on the trial court's order which failed to explicitly state that it considered nonstatutory mitigating circumstances.
 
 
 48
 It is well established that the sentencer must consider all mitigating circumstances, not merely statutory ones, in the recommendation of, or decision to impose, a sentence of death. See generally Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In this case, however, both lawyers argued nonstatutory mitigating circumstances to the jury, and the court's instruction to the sentencing jury specified it could consider nonstatutory mitigating circumstances. These factors indicate the court's awareness of the rule in Lockett and persuade us that when the judge stated in his order that in imposing the sentence of death he had considered "all the evidence," he considered evidence of nonstatutory mitigating circumstances, as well as of statutory mitigating circumstances.
 
 
 49
 Although the sentencing judge in this case did not state that he found no nonstatutory mitigating circumstances, he instructed the jury to consider nonstatutory mitigating circumstances. Daugherty's lawyer introduced evidence of several nonstatutory mitigating circumstances and both lawyers argued that evidence, all in the court's presence. We conclude, as reason and common sense dictate, that the state trial court did consider nonstatutory mitigating circumstances in imposing the sentence of death.
 
 4. Prosecutorial Discretion
 
 50
 Daugherty's fourth contention is that the state arbitrarily exercised its prosecutorial discretion in seeking the death penalty after Daugherty pleaded guilty to the murder of Sailer. Daugherty failed to raise this issue on direct appeal in state court. Since Daugherty has not made a showing of cause and prejudice, the issue is procedurally barred. Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); Daugherty v. State, 505 So.2d 1323, 1324 (Fla.1987). Having rejected Daugherty's claims on appeal, we affirm the district court's denial of Daugherty's petition for writ of habeas corpus.
 
 
 51
 Accordingly, the district court's judgment is affirmed.
 
 
 52
 AFFIRMED.
 
 
 
 [1]
 The standard jury instruction in Florida says: "8. The crime for which the defendant is to be sentenced was especially wicked, evil, atrocious or cruel." See Florida Standard Jury Instruction (Penalty Proceedings--Capital Cases) (1981)