Jeffery Joseph DAUGHERTY,
Petitioner,

v.

Richard L. DUGGER, Secretary, Florida Department of Corrections, and Robert A. Butterworth, Attorney General, State of Florida, Respondents.

No. 88–994–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Nov. 2, 1988.

John P. Dean and B. Andrew Brown, Donovan, Leisure, Newton and Irvine, Washington D.C., for petitioner.

Robert A. Butterworth, Atty. Gen., Richard B. Martell and Belle Turner, Asst. Attys. Gen., Daytona Beach, Fla., for respondents.

## ORDER

GEORGE KENDALL SHARP, District Judge.

At 2:49 p.m. on Tuesday, November 1, 1988, Petitioner, Jeffery Joseph Daugher-

ty, filed a Petition for Writ of Habeas Corpus asking this Court to vacate the sentence of death imposed upon him (Doc. No. 1). At 4:41 p.m. on the same day, Petitioner filed a Motion for Stay of Execution (Doc. No. 6). Petitioner is scheduled to be executed at 7 a.m. on Friday, November 4, 1988. This is Petitioner's second petition requesting such relief from this Court. His first petition, which was filed on October 9, 1987, was dismissed as frivolous by this Court on October 10, 1987. *Daugherty v. Dugger,* No. 87–704–Civ–Orl–18.

The procedural history of this case through October 10, 1987, is set forth in this Court's Order of that date. On October 10, 1987, the Eleventh Circuit Court of Appeals stayed Petitioner's execution, which had been set for October 15, 1987, but subsequently issued an opinion affirming this Court's dismissal of Daugherty's Petition for Writ of Habeas Corpus. *Daugherty v. Dugger,* 839 F.2d 1426 (11th Cir.1988). Certiorari was denied by the United States Supreme Court on October 3, 1988. *Daugherty v. Dugger,* — U.S. —, 109 S.Ct. 187, 102 L.Ed.2d 156 (1988).

On October 7, 1988, Governor Bob Martinez signed a death warrant directing that Petitioner be executed during the week of November 3 and November 10, 1988. On October 24, 1988, Petitioner filed a Motion To Vacate Sentence and Request for Stay of Execution in the Circuit Court of the Eighteenth Judicial Circuit, in and for Brevard County, Florida. On October 27, 1988, the trial court held a hearing on Petitioner's motion and subsequently denied relief. Petitioner filed a Petition for Writ of Habeas Corpus and Request for Stay of Execution in the Supreme Court of Florida. The Florida Supreme Court denied relief on November 1, 1988. *Daugherty v. State,* 533 So.2d 287 (Fla.1988).

In the Petition for Writ of Habeas Corpus currently before this Court, Petitioner asserts three claims for relief.[1] First, Peti-

---

1. The facts of this case are set forth in this Court's Order of October 10, 1987. Petitioner pled guilty to the kidnapping, robbery and murder of Lavonne Sailer, and a jury was impan-

eled to recommend a sentence. The jury unanimously recommended that a sentence of death be imposed upon Petitioner. Consistent with the jury's recommendation, the trial judge im-

tioner argues that the trial court gave an unconstitutional and prejudicial jury instruction defining the "heinous, atrocious and cruel" aggravating circumstance. Second, Petitioner contends that the prosecutor and the trial judge led the sentencing jury to believe that it did not bear responsibility for determining the appropriateness of Petitioner's death, in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Finally, Petitioner maintains that the prosecution injected irrelevant, prejudicial and inflammatory nonstatutory aggravating circumstances into the capital sentencing equation by making references to the victim's family during closing arguments. The trial judge found each of these claims to be procedurally barred, and the Florida Supreme Court summarily denied relief on each claim. Beginning at 7:00 p.m. on November 1, 1988, this Court held a hearing during which Petitioner and Respondent presented argument on the claims pending before this Court. This Court will address these claims, and the State's responses thereto, in the order in which they were raised by Petitioner in his Petition for Writ of Habeas Corpus.

### *"Heinous, Atrocious and Cruel" Instruction*

 Petitioner's first claim for relief is that the trial court unconstitutionally instructed the jury when it defined the aggravating circumstance of "heinous, atrocious and cruel" as follows:

> Heinous means extremely [wicked] or shockingly evil. Atrocious means outrageously wicked and foul. Cruel means designed to inflict a high degree of pain. Utter indifference to or [enjoyment] of the suffering of others, pitilessness.

Advance Appendix, Attachment C at 48. At the time of Petitioner's sentencing hearing, this instruction was a standard jury instruction promulgated by the Supreme Court of Florida. In his findings in support of the death sentence, the trial court

did *not* find that the murder of Lavonne Sailer was heinous, atrocious and cruel.

Petitioner bases his argument on the United States Supreme Court's decision in *Maynard v. Cartwright*, —— U.S. ——, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). In that case, the Court considered the "heinous, atrocious and cruel" aggravating circumstance of the Oklahoma death penalty statute, and, relying on *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), held that the statute was unconstitutionally vague as applied in that case.

In his motion for post-conviction relief filed in 1985, Petitioner argued that his counsel had been ineffective for failing to object to the heinous, atrocious and cruel aggravating circumstance instruction on the basis that the instruction was unconstitutionally vague. Petitioner's argument was premised upon *Godfrey*. The trial court conducted an evidentiary hearing and subsequently denied relief on the merits. The Supreme Court of Florida affirmed the trial judge's decision. *Daugherty v. State*, 505 So.2d 1323 (Fla.1987).

In his Petition for Writ of Habeas Corpus filed in this Court last year, Petitioner again asserted that trial counsel was ineffective for failure to properly define the heinous, atrocious and cruel aggravating factor. This Court rejected Petitioner's argument, noting that

> the state trial judge did not even find this aggravating factor to be present. *Daugherty v. State*, 505 So.2d at 1324 n. 1. Further, at the time of Petitioner's sentencing, the instruction given was a valid standard jury instruction for use in Florida capital cases.

In determining whether counsel's failure to object prejudiced Petitioner's defense, the Eleventh Circuit Court of Appeals assumed without deciding that the challenged instruction was unconstitutionally vague; that reasonably effective counsel would have objected to the instruction; that the jury did in fact find the murder to be heinous, atrocious and cruel; and that, had

posed the death sentence upon Petitioner, finding two aggravating and no mitigating circum- stances.

the jury been properly instructed, it would not have found the murder to be heinous, atrocious and cruel. The Court found that the evidence was sufficient to establish at least three aggravating circumstances, and, balancing those circumstances against the lack of mitigating circumstances, the Court concluded that the jury would have recommended a death sentence had it been properly instructed. The Court noted that

> [t]his determination is based primarily on our sense that the extraordinary violence of Daugherty's twenty-day crime spree which resulted in convictions for four murders and numerous robberies, assaults, and firearms violations must have weighed heavily in the jury's decision.

*Daugherty v. Dugger*, 839 F.2d 1426 at 1430.

The Florida Supreme Court rejected Petitioner's claim concerning the "heinous, atrocious and cruel" aggravating circumstance on the basis that the challenged circumstance was not found in this case. *Daugherty v. State*, 533 So.2d 287 (Fla. 1988).

The State suggests that the constitutional validity of this instruction has already been litigated and that Petitioner's presentation of this claim again is an abuse of the writ. To the extent this claim was not presented on direct appeal and in his motion for post-conviction relief, the State asserts that the claim is procedurally barred because *Maynard* is simply a reapplication of *Godfrey*, which was decided in 1980, and does not represent a major constitutional change in the law entitled to retroactive application. Finally, the State argues that Petitioner is entitled to no relief on this claim because the trial court did not find the aggravating circumstance of heinous, atrocious and cruel to be applicable and because the instruction given has never been invalidated by any court.

Petitioner contends that the Eleventh Circuit Court's ruling that the instruction was not prejudicial is not dispositive of this issue because that ruling was made in response to Petitioner's ineffective assistance of counsel claim, in which Petitioner bore the burden of proving prejudice, while the State carries the burden of proving that a constitutional error was harmless beyond a reasonable doubt. Petitioner submits that the State cannot prove that the instruction at issue was harmless because the jury did not specify the aggravating circumstances that it found in support of its recommendation of death.

This Court has considered the merits of the claim concerning the "heinous, atrocious and cruel" instruction and has found that no relief is warranted. This Court agrees with the Eleventh Circuit Court of Appeal's conclusion that, assuming the jury was improperly instructed with respect to the challenged factor, "no reasonable probability exists that the jury would have recommended a sentence other than death had it been properly instructed." *Id.* at 1430. Although the Court need not determine whether an abuse of the writ is present when the claim is "conclusively without merit," *Moore v. Kemp*, 824 F.2d 847, 851 n. 5 (11th Cir.1987),[2] the Court alternatively finds that relief is barred on the ground that Petitioner's presentation of this claim in his second Petition for Writ of Habeas Corpus constitutes an abuse of the writ pursuant to the Rules Governing Section 2254 Cases.[3]

### Caldwell Claim

■ In his second claim, Petitioner asserts that both the trial judge and the prosecutor made misleading statements to the sentencing jury that diminished their sense of responsibility for Petitioner's sentence in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d

---

2. Abuse of the writ rules "are not operative in cases where the second or successive application is shown, on the basis of the application, files and records of the case alone, conclusively to be without merit." *Id.* (quoting *Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963)).

3. The Court agrees with the State and the trial court that *Maynard* is simply a reaffirmation and application of the *Godfrey* decision and, as such, it does not constitute new law created since the filing of Petitioner's first post-conviction motion.

231 (1985). This claim was rejected by the Florida Supreme Court on the basis that *Caldwell* is inapplicable in Florida. *Daugherty v. State,* 533 So.2d 287 (Fla. 1988).

The Court has considered this claim and has determined that it is completely devoid of merit. *"Caldwell*'s rule is to the effect that jurors who are called upon to serve in the sentencing phase of a capital case must not be misled into believing that their responsibility is less than it really is under the law." *Stewart v. Dugger,* 847 F.2d 1486, 1490–91 (11th Cir.1988). *Caldwell* "has been the subject of lively discussion in [the Eleventh Circuit] with respect to the sentencing phase of the Florida trifurcated capital trial procedure." *Id.* at 1491.

In *Caldwell,* the prosecutor made inaccurate and misleading statements to the jury which shifted the jury's sense of responsibility for imposing the death sentence from the jury to the appellate courts. The statements, which were designed to give the jury the idea that its role in the sentencing process was not a serious responsibility, violated the defendant's constitutional rights and entitled him to a new trial. *See Caldwell; Harich v. Dugger,* 844 F.2d 1464 (11th Cir.1988). The Eleventh Circuit Court of Appeals has limited *Caldwell* to those cases in which some affirmative misstatement or misconduct misleads the jury as to its role in the sentencing process. According to the Eleventh Circuit, *"Caldwell* does not mandate reversal if an *advisory* jury is told that its role is to advise or to recommend." *Harich,* 844 F.2d at 1473 (emphasis in original).

In the instant case, Petitioner argues that both the State and the trial judge violated *Caldwell* by directing statements to the jury designed to diminish the jury's sense of the importance of its recommendation. Specifically, Petitioner points to the following comment made by the prosecutor during voir dire:

Let me bring out another thing I didn't make clear. This part of the trial does not require a unanimous verdict. It's a majority vote and your opinion is advisory in nature, to advise the penalty, and

His Honor has the final say as to what the penalty is.

Advance Appendix, Attachment P at 37–38. Petitioner also asserts that the prosecutor discounted the jury's role in sentencing when he stated during closing argument:

Let me advise you on this, that it's an advisory verdict and that's exactly what it is. His Honor is the last person who will consider what the penalty is going to be. He can override your verdict or he can follow it. His job is that of a buffer based on all of his experience to make sure that no mistakes are made which would result in an unjust result.

Advance Appendix, Attachment C at 4.

Petitioner asserts that the trial judge also misled the jury as to its role when he instructed as follows:

As to what you have been told, the final decision as to what punishment should be imposed is the responsibility of the judge, however, it is your duty to follow the law which will now be given to you by the Court and render to the Court an advisory verdict based upon your determination as to whether sufficient aggravating circumstances exist to justify imposition of the death penalty, and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.

Advance Appendix, Attachment C at 47.

After reviewing this record, the Court finds that Petitioner has failed to demonstrate that the jurors were misled as to their role in sentencing or that their sense of responsibility was diminished in any way. The jury was repeatedly advised that its recommendation was entitled to great weight. The challenged statements of the trial judge and the prosecutor did not minimize the important responsibility of the jury, but instead served to inform the jury as to the respective functions of the judge and jury during sentencing. In addition, defense counsel advised the jury as follows:

I don't know how many times I've heard this advisory. It's true, strictly speaking, but why do you think that you feel so serious about it? Because your vote,

whatever it may be, in all likelihood and all probability will be conformed to by the judge, because it is your decision, hopefully organized decision, by vote, as to the future of Jeff, which means each and every one of you must search throughout your heart and your mind as to whether you're willing to impose the death penalty on another human being. . . .

Supplemental Transcript of Closing Argument at 29. "Nothing was said which would imply to the jury that its recommendation was superfluous or that the importance of the jury's decision was lessened by the fact that it was only a recommendation." *Harich*, 813 F.2d at 1101. Accordingly, the Court finds that Petitioner is entitled to no relief on this claim.

The Court further concludes that the presentation of this claim in a second Petition for Writ of Habeas Corpus constitutes an abuse of the writ.

### References to Victim's Family

■ In his final claim, Petitioner asserts that the prosecutor made references to the victim's family in his closing arguments that are forbidden by *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). Petitioner asserts that, contrary to the rule established in *Booth*, the prosecutor in this case made an explicit reference to the pain felt by the victim's families, especially during the holiday season:

I expect [defense counsel] to point out the fact if you recommend the death penalty that no matter what you recommend in that regards you will not bring any of the dead ones back. . . . But he can bring, and he will bring those people back to life if he receives a recommendation of mercy, because they have heirs, they have relatives, they have mothers, fathers, brothers, and sisters. And what happens at Christmas time when they ask where is George, Miss Sailer, Miss Abrams, they're not with us today, and then that bang is going to hit them, yeah, but Jeff is, I wonder where he's eating turkey today, what kind of Christmas gifts did he get, and then the tears of the victims will flow again. So this man does have the ability to bring those people back, but in a very perverse way because the mental anguish, the pain, the suffering that he's caused is only caused because this case hasn't been put to rest and Jeff hasn't paid the price that he extracted from his victims, not to mention Christmas and birthdays, mothers or grandchildren.

Advance Appendix, Attachment C at 25–26.

The Florida Supreme Court held that Petitioner could not prevail on this claim because his trial counsel had failed to object to the prosecutor's closing argument. *Daugherty v. State*, 533 So.2d 287 (Fla. 1988).

*Booth v. Maryland* involved a Maryland statute which required that a presentence report containing a "victim impact statement" be considered in all felony cases. The victim impact statement described in detail the effect of the crime on the victim and his family based on information supplied by the victim or his family. The United States Supreme Court held that the formal presentation of such information to a capital sentencing jury violates the Eighth Amendment. Thus, the Maryland statute at issue was invalid to the extent it required consideration of the statement.

The victim impact statement presented in *Booth* provided the jury with two types of information: the personal characteristics of the victims and the emotional impact of the crime on their family, and the family members' opinions and characterizations of the crime. The statement contained family members' comments emphasizing the victims' outstanding personal qualities, 107 S.Ct. at 2531 n. 2, the serious emotional problems suffered by family members as a result of the crimes, *id.* 107 S.Ct. at 2531, and the family members' perception of the crimes, including the son's opinion that his parents were "butchered like animals" and that the perpetrators of such crimes should not be able to "get away with it." *Id.* In holding that such information created a constitutionally unacceptable risk that the jury might impose the death penalty in an arbitrary and capricious manner, the Supreme Court stated that the capital sentencing decision cannot be allowed to turn

on whether the victim was "a sterling member of the community rather than someone of questionable character," or the ability of the family members to articulate their sense of loss. *Id.* 107 S.Ct. at 2534. The Supreme Court further noted that family members' opinions and characterizations of the crimes "can serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." *Id.* 107 S.Ct. at 2536.

This Court has reviewed the record and determined that Petitioner is not entitled to relief on the merits.

A comparison of the emotionally charged and detailed victim impact information presented to the jury in *Booth* with the oblique references to the victim's family made by the prosecutor in the instant case reflects a material difference in the scope and tone of the information provided. The introduction of the victim impact statement in *Booth* clearly compromised the Eight Amendment's requirement of reliability in capital sentencing cases. The prosecutor's remarks concerning the victim's family in the instant case, however, did not approach in length and detail the objectionable statement in *Booth*. Accordingly, this Court finds that the prosecutor's comments did not create the risk that a death sentence would be based on considerations that are "constitutionally impermissible or totally irrelevant to the capital sentencing process," *id.* 107 S.Ct. at 2533 (quoting *Zant v. Stephens*, 462 U.S. 862, 885, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983)), and thus did not rise to the level of a constitutional violation cognizable in habeas.[4] *See Hayes v. Lockhart*, 852 F.2d 339 (8th Cir.1988); *Byrne v. Butler*, 845 F.2d 501 (5th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 2918, 101 L.Ed.2d 949 (1988); *Blanco v. Dugger*, 691 F.Supp. 308 (S.D.Fla.1988).

█ The Court also notes that Petitioner did not raise this claim in his first Petition for Writ of Habeas Corpus although the

*Booth* decision was released several months prior to the time the petition was filed.[5] Thus, this Court further finds that Petitioner's presentation of this claim in his second Petition for Writ of Habeas Corpus constitutes an abuse of the writ.

*Conclusion*

Any of Petitioner's assertions not specifically addressed in this Order have been found to be without merit.

Therefore, it is ORDERED and ADJUDGED:

1. The Petition for Writ of Habeas Corpus and Motion for Stay of Execution are hereby DENIED.

2. The Court declines to issue a Certificate of Probable Cause in this case because Petitioner has failed to make a colorable showing of the denial of a federal constitutional right.

4. The Clerk shall enter judgment dismissing this case with prejudice.

5. The Petitioner's Motion to Proceed In Forma Pauperis is hereby GRANTED.

DONE AND ORDERED.

---

4. This Court also notes that this case is distinguishable from *Booth* in that the prosecutor's comments challenged by Petitioner did not constitute a state-sanctioned submission of victim impact testimony as part of the state's case.

5. *Booth* was decided on June 15, 1987; Petitioner filed his Petition for Writ of Habeas Corpus in the State court on September 16, 1987, and in this Court on October 9, 1987.