Carl JACKSON, Petitioner–Appellant,

v.

Richard L. DUGGER, Secretary, Florida Department of Corrections, Respondent–Appellee.

No. 90–3237.

United States Court of Appeals, Eleventh Circuit.

April 29, 1991.

Billy H. Nolas, Gail Anderson, Julie D. Naylor, Tallahassee, Fla., for petitioner-appellant.

Mark Menser, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellee.

Before JOHNSON, EDMONDSON and COX, Circuit Judges.

COX, Circuit Judge:

On April 20, 1975, Carl Jackson robbed a convenience store and murdered the clerk, Ann Butler. In the process of leaving, Jackson kidnapped Mary Price and later murdered her. He was convicted in a Florida court of robbery, kidnapping and two counts of first-degree murder. He was sentenced to death for the murders. He ultimately attacked his convictions and death sentence by a 28 U.S.C. § 2254 petition filed in the Northern District of Florida. The district court denied relief and Jackson appeals. We affirm the district court's denial of relief as to Jackson's convictions, but reverse the district court's denial of relief relative to his death sentence.

## I. FACTS AND PROCEDURAL HISTORY [1]

On the morning of April 20, 1975, Carl Jackson persuaded Jimmy Harris, a friend, to drive Jackson to a Jr. Food Store in Bay County, Florida. Once Jackson went into the store, Harris, not wanting to become further involved, drove away leaving Jackson stranded. Jackson proceeded to rob the store. During the robbery he shot and killed Ann Butler, the store clerk on duty. While Jackson was committing the robbery, Mr. and Mrs. Price, on their way to Sunday church services, stopped at the store. Mr. Price went into the store, leaving his car keys in the ignition and Mrs. Price in the car. Jackson, unseen by Mr. Price, exited the store and, realizing that Harris had left him stranded, commandeered the Prices'

car with Mrs. Price in it. Mr. Price found the items he wanted and went to the counter to pay for them. At the counter he found Mrs. Butler lying on the floor dead. After calling the police Mr. Price noticed that Mrs. Price and the car were gone.

Jackson drove the Prices' car a short distance to a secluded area. Once there, he shot and killed Mrs. Price. Jackson then abandoned the car. Although there was no direct evidence that Jackson committed these acts, there was overwhelming circumstantial evidence including one of Jackson's fingerprints in the Prices' car, his bloody jacket near the car, and the testimony of Jimmy Harris.

After an investigation, Jackson was indicted and tried for the murders of Mrs. Butler and Mrs. Price, the kidnapping of Mrs. Price and the robbery of the Jr. Food Store. The jury found Jackson guilty on all four counts. A sentencing hearing was held to determine whether Jackson should be sentenced to death or life imprisonment for the murders.[2] Under Florida law, both aggravating and mitigating circumstances could be presented at the hearing. The State, relying on the evidence produced at trial to establish several aggravating circumstances, produced no additional evidence. The defense introduced the testimony of four witnesses. Part of that testimony indicated that Jackson had served eight years in the military, including three tours of combat duty in Vietnam.

The jury, by a vote of 11–1, recommended that Jackson be sentenced to death. The trial judge, after finding five aggravating[3] and no statutory mitigating circumstances, sentenced Jackson to death. Jackson appealed to the Supreme Court of Florida. The supreme court, after striking

---

1. This statement of the facts is based upon the Supreme Court of Florida's summary of the evidence at trial. *Jackson v. State*, 359 So.2d 1190 (Fla.1978), *cert. denied*, 439 U.S. 1102, 99 S.Ct. 881, 59 L.Ed.2d 63 (1979).

2. Jackson was sentenced to life imprisonment on the robbery charge and fifteen years imprisonment on the kidnapping charge.

3. The five aggravating circumstances found by the court were: (1) the murder of Ann Butler was committed during the course of a robbery; (2) the murder of Ann Butler was committed for pecuniary gain; (3) the murder of Mary Price was committed while Jackson was fleeing after the robbery; (4) the murder of Mary Price was committed during a kidnapping; and (5) the two murders were committed to avoid a lawful arrest.

one of the aggravating circumstances,[4] affirmed his convictions and sentence, *Jackson v. State*, 359 So.2d 1190 (Fla.1978), *cert. denied*, 439 U.S. 1102, 99 S.Ct. 881, 59 L.Ed.2d 63 (1979), and the United States Supreme Court denied certiorari. *Jackson v. Florida*, 439 U.S. 1102, 99 S.Ct. 881, 59 L.Ed.2d 63 (1979).

Jackson then filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850. The trial court rejected all of Jackson's claims and the Supreme Court of Florida affirmed that ruling. *Jackson v. State*, 437 So.2d 147 (Fla.1983), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1016, 79 L.Ed.2d 246 (1984). After a death warrant was signed, Jackson filed a second Rule 3.850 motion. Additionally, Jackson filed a petition for a writ of habeas corpus in the Supreme Court of Florida. The trial court again rejected Jackson's Rule 3.850 claims. The supreme court affirmed the trial court's ruling and also denied Jackson's petition for habeas corpus relief. *Jackson v. State*, 452 So.2d 533 (Fla.1984).

In June 1984, Ella Mae Wilson filed, on Jackson's behalf, a "next friend" petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court, after initially staying the petition, dismissed it without prejudice to allow Jackson to exhaust his state remedies regarding the claim that his sentencing hearing violated *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

Thereafter, Jackson filed a second petition for a writ of habeas corpus in the Supreme Court of Florida alleging that his sentencing hearing violated *Hitchcock*. The supreme court determined that Jackson's sentencing hearing violated *Hitchcock* because the trial court's instructions precluded the jury from considering nonstatutory mitigating circumstances in determining Jackson's sentence. The court, however, concluded that any error that resulted from such a violation was harmless beyond a reasonable doubt because the nonstatutory mitigating evidence was "minimal." *Jackson v. Dugger*, 529 So.2d 1081, 1082 (Fla.1988).

In July 1989, Jackson filed a third petition for a writ of habeas corpus in the Supreme Court of Florida alleging five claims. The supreme court denied the petition without opinion. *Jackson v. Dugger*, 554 So.2d 1168 (Fla.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3294, 111 L.Ed.2d 803 (1990).

Jackson then filed this petition for a writ of habeas corpus in the Northern District of Florida alleging seventeen claims.[5] The

---

**4.** The aggravating circumstance struck by the supreme court was that the murder of Mrs. Butler was committed for pecuniary gain.

**5.** Jackson's petition raised seventeen claims. We will number the claims as did Jackson's petition. Six of Jackson's claims sought to overturn his convictions: (7) a claim that he received ineffective assistance of counsel during the guilt/innocence phase of his trial; (8) a claim that he received ineffective assistance of counsel on direct appeal; (14) a claim that jurors were dismissed in violation of the principles announced in *Witherspoon v. Illinois;* (15) a claim of improper argument by the prosecution during the guilt phase of the trial; (16) a claim that admission of testimony to the effect that Jackson requested an attorney during a custodial interrogation, and the prosecutor's comment on Jackson being provided an attorney after his arrest, violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments; and (17) a claim that photographic evidence was improperly admitted at trial.

The remaining eleven of Jackson's claims challenged his death sentence: (1) a claim that he was sentenced in violation of the principle stated in *Hitchcock v. Dugger*; (2) a claim that there was an improper argument by the prosecutor during the sentencing phase of the trial which created a "presumption of death"; (3) a *Booth v. Maryland* claim; (4) a claim that the trial court erred by not finding the mitigating circumstance of "no significant criminal history"; (5) a claim that he received ineffective assistance of counsel during the sentencing phase of the trial; (6) a second *Hitchcock v. Dugger* claim (*Hitchcock* error restricted defense counsel's efforts); (9) a claim that the trial court failed to provide a factual basis for imposition of the death penalty; (10) a claim that the Supreme Court of Florida erred by not ordering a new sentencing hearing after striking one aggravating circumstance; (11) a claim that the trial court misapplied (doubled) aggravating circumstances in sentencing Jackson; (12) a claim that the avoiding arrest aggravating circumstance was misapplied; and (13) a claim that the jury was misinstructed on the number of votes required to recommend life imprisonment.

district court determined that Jackson's sentencing was in violation of the principle announced in *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). The district court considered the harmless error issue a "very close question," but concluded that the *Hitchcock* violation was harmless beyond a reasonable doubt. (R.4–5). The court then determined that none of the remaining claims were "sufficiently meritorious to warrant issuance of the writ." *Id.* The court, however, issued a certificate of probable cause to appeal, specifically focusing on the claim that Jackson's sentencing hearing violated *Hitchcock*. Jackson now appeals the district court's denial of relief on eight of his seventeen claims.[6]

## II. DISCUSSION

### A. Claims Relating to Conviction

Jackson appeals the denial of relief on only one claim that relates to his convictions. It is the claim that he was denied effective assistance of counsel on direct appeal in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. Claims of ineffective assistance of counsel are governed by the standard announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064. The defendant must satisfy both parts of this standard to be entitled to relief.

Jackson argues that his appellate counsel was deficient in failing to raise two issues on direct appeal that would have resulted in the reversal of his convictions. First, he argues that his appellate counsel was deficient in failing to assert on direct appeal

that potential jurors were dismissed by the trial court in violation of the principles announced in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). When presented with an identical claim, the Supreme Court of Florida found that this issue was not preserved for appellate review because no objection to dismissal of these jurors was asserted in the trial court. *Jackson v. State*, 452 So.2d 533, 536 (Fla.1984).

Jackson also argues that appellate counsel was deficient in failing to assign as error prejudicial closing arguments made by the State during the guilt/innocence phase of the trial. The record in this case does not include a transcript of the guilt/innocence phase of the trial, but Jackson's petition includes excerpts from the transcript which set forth the arguments complained of. These excerpts do not reflect any objection on the part of trial counsel to the arguments in question. Additionally, Jackson, in another part of his petition, specifically asserts that counsel failed to object to these arguments. R.1–4-157, 158. Under Florida law, failure to assert appropriate objections at trial bars review on appeal.[7] *Wilson v. State*, 436 So.2d 908, 910 (Fla.1983); *State v. Cumbie*, 380 So.2d 1031, 1033 (Fla.1980); *Clark v. State*, 363 So.2d 331, 333 (Fla.1978).

Since the matters complained of in this case were not preserved for review on appeal, appellate counsel was procedurally barred from raising them on direct appeal and therefore was not deficient in failing to attempt to do so. *Bertolotti v. Dugger*, 883 F.2d 1503, 1523 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990). Because Jackson has failed to show that appellate counsel was deficient, the district court properly denied relief on the claim that he received ineffective assistance of counsel on direct appeal.

---

6. Jackson appeals the district court's denial of relief on only one claim that relates to his convictions—claim (8). He also appeals the denial of relief on seven claims that challenge his death sentence: claims (1), (2), (3), (5), (9), (10) and (12).

7. The general rule under Florida law is that failure of trial counsel to object at trial bars appellate review. The sole exception to this rule is when the error constitutes "fundamental error." *Clark v. State*, 363 So.2d 331, 333 (Fla. 1978). Jackson does not either in his petition or brief on appeal contend that the arguments complained of presented "fundamental error."

## B. Claims Relating to Sentence

### i. *Hitchcock Claim*

■ Jackson contends that his sentencing hearing violated *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), because the jury was instructed to consider only statutorily enumerated mitigating circumstances and because the judge did not consider nonstatutory mitigating circumstances in sentencing Jackson to death. In *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), the Supreme Court held that an advisory jury may not be prohibited from considering relevant nonstatutory mitigating circumstances in making its sentencing recommendation and that the judge must consider relevant nonstatutory mitigating circumstances in determining an appropriate sentence. *Id.* at 398–99, 107 S.Ct. at 1824. The Court concluded that a jury's and judge's failure to consider such mitigating evidence violates the principles announced in *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion). *Id.*

In this case, the State of Florida concedes, and both the Supreme Court of Florida and the district court found, that Jackson's sentencing hearing violated *Hitchcock.* The trial court's jury instructions were almost identical to those given in *Hitchcock.*[8] We conclude that the jury, in violation of *Hitchcock,* was not permitted to consider nonstatutory mitigating circumstances in making its recommendation.

We also conclude that the trial judge did not consider nonstatutory mitigating circumstances in sentencing Jackson. In support of this conclusion we note that the trial judge instructed the jury only to consider statutory mitigating circumstances. A trial court is presumed to follow the instructions given to the jury. *See Daugh-*

*erty v. Dugger,* 839 F.2d 1426 (11th Cir.), *cert. denied,* 488 U.S. 871, 109 S.Ct. 187, 102 L.Ed.2d 156 (1988); *Zeigler v. Dugger,* 524 So.2d 419 (Fla.1988). Additionally, the trial court's sentencing order referred to "insufficient mitigating circumstances as enumerated in Subsection (7) of said Section 921.141...." R.S. 13. This was almost identical to the sentencing order in *Hitchcock. See Hitchcock,* 481 U.S. at 398, 107 S.Ct. at 1824. The sentencing order does not mention nonstatutory mitigating circumstances. Furthermore there were no on-the-record statements by the trial judge indicating that he would consider nonstatutory circumstances. These factors support our conclusion that the trial judge did not consider nonstatutory mitigating circumstances, in violation of *Hitchcock.*

■ Although we conclude that a *Hitchcock* violation occurred, that does not automatically require a reversal of Jackson's sentence. If the *Hitchcock* error is harmless beyond a reasonable doubt, then Jackson's sentence need not be reversed. *See, e.g., Demps v. Dugger,* 874 F.2d 1385 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1834, 108 L.Ed.2d 963 (1990); *Clark v. Dugger,* 834 F.2d 1561 (11th Cir.1987), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988). A *Hitchcock* violation is harmless error if the court can conclude beyond a reasonable doubt that the nonstatutory mitigating evidence regarding the defendant's character that was not considered by the jury would not have influenced the jury to recommend a life sentence. *See Demps v. Dugger,* 874 F.2d 1385, 1390 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1834, 108 L.Ed.2d 963 (1990). Nonstatutory mitigating evidence not considered by the jury affects the jury's recommendation if it amounts to a significant mitigating circumstance. *See Delap v. Dugger,* 890 F.2d 285, 306 n. 23 (11th Cir.1989) ("The presence of substantial nonstatutory mitigating evidence in

---

8. In *Hitchcock,* the trial judge instructed the jury that "[t]he mitigating circumstances which you may consider shall be the following...." The court then read the statutory mitigating factors set out in Fla.Stat. § 921.141(6). *See Hitchcock,* 481 U.S. at 398, 107 S.Ct. at 1824.

The trial court at Jackson's sentencing hearing instructed the jury "[t]he mitigating circumstances which you may consider, if established by the evidence, are these: [Listing statutory mitigating factors]." Transcript of sentencing hearing at 795–96.

---

this case ... is sufficient to render the *Hitchcock* error not harmless beyond a reasonable doubt"), *cert. denied,* —— U.S. ——, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990); *Tafero v. Dugger,* 873 F.2d 249, 252 n. 4 (11th Cir.1989) (per curiam) (error harmless where "[t]he factors presented by Tafero contain little mitigating value."), *cert. denied,* —— U.S. ——, 110 S.Ct. 1834, 108 L.Ed.2d 962 (1990); *Jones v. Dugger,* 867 F.2d 1277, 1279 (11th Cir.1989) ("resentencing is not required where the nonstatutory mitigating evidence presented was so insignificant. . . .").

The State of Florida concedes that nonstatutory mitigating evidence was presented to the jury but maintains that this mitigating evidence was so insignificant that even if the jury could have considered it, they would not have been affected by it and the sentence recommendation would have been the same. Therefore, the State argues, the *Hitchcock* error was harmless beyond a reasonable doubt. This was the position taken by the Supreme Court of Florida when it reviewed Jackson's *Hitchcock* claim. *See Jackson v. Dugger,* 529 So.2d 1081, 1082 (Fla.1988). The court stated that "[v]iewed in its best light, the nonstatutory mitigating evidence was minimal. We are convinced beyond a reasonable doubt that even with the proper jury instruction, the jury would not have made a recommendation of life imprisonment for this double murder." *Id.*

■ The State of Florida argues that this court is bound by the supreme court's determination that the error was harmless. We reject that argument. "The ultimate determination of whether federal constitutional error is harmless is a federal question" and therefore federal courts are not bound by state court determinations of what constitutes harmless error. *Grizzell v. Wainwright,* 692 F.2d 722, 725 (11th Cir.1982), *cert. denied,* 461 U.S. 948, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983). *See also Booker v. Dugger,* 922 F.2d 633, 636 n. 4 (11th Cir.1991).

■ Jackson asserts that he produced significant evidence of nonstatutory mitigating circumstances. He points to evidence that he had served in the military for eight years; he served overseas, including three tours of combat duty in Vietnam; he was wounded in the chest while in Vietnam; he was a religious person; he had no history of prior violence; he had attempted to go to college; and he was amenable to incarceration.

After reviewing the transcript of the sentencing hearing, we conclude that Jackson's military service is a significant nonstatutory mitigating circumstance that the jury was not allowed to consider. A psychologist, who interviewed Jackson, testified that, "I believe he [Jackson] told me he was in the army for eight years. . . . He said that he was in Vietnam three times and on each of those occasions he was in a combat situation for [a] fairly lengthy period of time." Sentencing Transcript at 741–42.

We believe that Jackson's military service is in and of itself a significant mitigating circumstance. We therefore need not decide whether the other evidence presented by Jackson was significant. The State argues that combat military service alone is not a significant mitigating circumstance and relies on this court's opinion in *Demps v. Dugger,* 874 F.2d 1385 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1834, 108 L.Ed.2d 963 (1990), to support that position. In *Demps,* the petitioner alleged that he had produced evidence of military combat duty and argued that this would have influenced the jury to recommend life instead of death. In rejecting that argument, this court stated "that the record reflects no evidence indicating any overseas combat experience." *Id.* at 1390. Thus, the *Demps* court concluded that Demps had failed to produce any nonstatutory significant mitigating evidence rather than that military combat service is not a significant mitigating circumstance.

We conclude that Jackson presented significant nonstatutory mitigating evidence that was not considered by the jury or judge because of the *Hitchcock* violation. We do not hold that military service, regardless of type and duration, is a significant nonstatutory mitigating circumstance.

We do hold that Jackson's military service, as reflected by the record in this case, is significant. We cannot say beyond a reasonable doubt that this mitigating evidence would not have affected the jury's recommendation. Jackson's military service is a significant circumstance on which reasonable jurors could base a decision to recommend life imprisonment instead of death. We will not speculate about the actual effect of such evidence on a judge or jury. The district court erred by concluding that the error was harmless and by denying relief regarding Jackson's sentence.

ii. *Other Claims Relating to Sentence*

Jackson also appeals the denial of relief on six other claims that challenge his death sentence. Because we hold that he is entitled to a new sentencing hearing, we do not address these claims.

### III. CONCLUSION

We AFFIRM the district court's order denying relief regarding Jackson's convictions. We conclude that Jackson's sentencing hearing violated *Hitchcock v. Dugger* and that the error was not harmless beyond a reasonable doubt. We therefore REVERSE the district court's order denying relief regarding Jackson's sentence and REMAND to the district court with instructions to enter an order granting the petition for a writ of habeas corpus unless the State of Florida, within a reasonable time, either: (a) affords Jackson a new sentencing hearing and resentences Jackson in a proceeding that is consistent with the requirements of *Hitchcock;* or (b) vacates the death sentence and imposes a lesser sentence consistent with law.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.