Ronald WOODS, Petitioner,

v.

Richard DUGGER, Secretary, Florida
Department of Corrections,
Respondent.

No. 88–910–Civ–J–14.

United States District Court,
M.D. Florida,
Jacksonville Division.

Feb. 21, 1989.

On Motion to Alter or Amend Judgment
April 14, 1989.

Billy H. Nolas and Timothy D. Schroeder, Office of the Capital Collateral Representative, Tallahassee, Fla., for petitioner.

Gary Printy, Asst. Atty. Gen., Office of the Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

This case came on to be heard on a Petition for Writ of Habeas Corpus By Person In State Custody, filed by Ronald Woods, a death row inmate at Florida State Prison, on November 2, 1988. Respondent filed a Motion To Dismiss Petition For Writ Of Habeas Corpus (§ 2254) Relief And Response In Opposition To Stay Of Execution, on November 2, 1988.

On June 7, 1983, petitioner, then an inmate at Union Correctional Institution, was charged by indictment with the crime of first degree murder for the stabbing death of Correctional Officer John Steven Dennard, the crime of attempted first degree murder of three other correctional officers, and the crime of possession of contraband in a state penal institution. All five counts arose out of the events of May 5, 1983, for which another inmate, Leonard Bean, stood trial with petitioner.

Petitioner's trial began on September 26, 1983, and on September 30, 1983, the jury returned a verdict of guilty as charged on all counts. On October 1, 1983, the trial court conducted an advisory sentencing proceeding and, at the conclusion of this proceeding, the jury recommended, by a vote of seven to five, that petitioner be sentenced to death. The trial judge agreed with the recommendation and sentenced petitioner accordingly.[1]

Petitioner appealed his conviction and sentence of death directly to the Florida Supreme Court.[2] The Florida Supreme Court affirmed petitioner's death sentence on April 24, 1986, and denied his request for rehearing on July 18, 1986. *Woods v. State*, 490 So.2d 24 (Fla.1986). On November 10, 1986, over the dissents of Justices Brennan, Marshall, and Blackmun, the United States Supreme Court denied Woods's petition for a writ of certiorari. *Woods v. Florida*, 479 U.S. 954, 107 S.Ct. 446, 93 L.Ed.2d 394 (1986).

On October 5, 1987, the Governor of the State of Florida signed a death warrant scheduling petitioner's execution for 7:00 a.m. on December 10, 1987. Following the issuance of the death warrant, petitioner on November 6, 1987, filed a motion in the state trial court to vacate his convictions and sentence, pursuant to Fla.R.Crim.P. 3.850, and simultaneously sought a stay of execution, time for preparation and investigation, permission to amend the motion,

---

1. Petitioner's co-defendant, Leonard Bean, also was convicted on the first degree murder charge and the contraband charge, but he was convicted on only one charge of first degree attempted murder. The advisory jury recommended life imprisonment for Bean and the judge agreed with this recommendation, imposing sentence accordingly.

2. Petitioner timely filed a notice of appeal to the Supreme Court of Florida on October 14, 1983. Subsequently, that court decided *State v. Neil*, 457 So.2d 481 (Fla.1984), in which it held that a party may be required to state the basis for exercising peremptory challenges. Petitioner filed a motion requesting that the Florida Supreme Court relinquish jurisdiction in order to permit reconstruction of the record regarding the *Neil* issue. Upon the granting of this motion, the trial court held a hearing on January 4, 1985, to reconstruct the record of challenges. This record then was certified as a part of petitioner's direct appeal.

On direct appeal to the Florida Supreme Court, petitioner presented the following issues:

1. The court erred in denying Woods's motion for mistrial because the prosecutor peremptorily excused black prospective jurors solely based upon their race in violation of article I, section 16 of the Florida Constitution and the sixth and fourteenth amendments to the United States Constitution.
2. The court erred in denying several of Woods's motions to continue his case in violation of his sixth and fourteenth amendment rights to a fair trial.
3. The court erred in not excluding the large numbers of uniformed department of corrections' employees from the spectators' portions of the courtroom in violation of his sixth and fourteenth amendment rights to a fair and impartial jury and right to a fair trial.
4. The court erred in sentencing Woods to death in violation of the eighth and fourteenth amendments to the United States Constitution.
5. The court erred in not finding any mitigating factor that reflected Woods's character.

and an evidentiary hearing.[3] These motions were denied by the trial court on November 23, 1987, as to all but one issue,[4] for which an evidentiary hearing was set. After that hearing on December 1, 1987, the trial court denied relief on the remaining ground.

On the day of the December 1, 1987, hearing, petitioner additionally moved to vacate the order of November 23, and to add five additional grounds for relief to his original 3.850 motion.[5] In an order dated December 2, 1987, the trial court reaffirmed its original rulings, and, as to the additional five grounds, found that petitioner could have raised the issues in his prior 3.850 motion. Petitioner sought rehearing of the trial court's order,[6] but on December 4, 1987, this motion was denied.

Petitioner appealed the December 2 and December 4, 1987, orders denying his 3.850 petitions to the Florida Supreme Court.[7]

3. Petitioner presented the following issues in his original 3.850 motion filed on November 6, 1987:

1. Mr. Woods's death sentence was imposed in violation of the eighth amendment—execution of an eighteen-year-old offender with the mental age of a twelve year old is cruel and unusual punishment.

2. Mr. Woods's sixth, eighth and fourteenth amendment rights were violated when the court refused to continue the proceedings so that counsel could conduct a reasonable penalty-phase investigation and/or when counsel unreasonably failed to discover and present critical mitigating evidence. The error also deprived Mr. Woods of an competent mental health evaluation, in violation of the fourteenth amendment.

3. Mr. Woods's rights to a fair and impartial trial were violated by the atmosphere at trial which was so pervasively prejudicial that Mr. Woods was denied due process of law.

4. The jury was instructed that it had to consider Mr. Woods's mental problems, if found, as *aggravating* rather than mitigating circumstances, in violation of the sixth, eighth, and fourteenth amendments.

4. The court reserved ruling on petitioner's Claim 4, *see supra* note 4, that an incorrect instruction of law was read to the jury at the penalty phase.

5. Petitioner sought to add the following claims:

5. It was improper for the state to urge, and for the court to consider, the victim's close personal and professional relationship with the prosecution and the court as a basis for imposition of death, in violation of the sixth, eighth and fourteenth amendments.

6. Mr. Woods's rights under the fifth, sixth, eighth and fourteenth amendment rights were violated by the prosecutor's repeated reference to Mr. Woods's decision not to present evidence, and trial counsel's failure to object was not a matter of tactic or strategy but was an unreasonable and prejudicial omission.

7. The trial court improperly relied upon juvenile offenses and prison disciplinary reports in aggravation of punishment in imposing a sentence of death, and Mr. Woods had no meaningful opportunity to explain how these factors were actually mitigating, in violation of the sixth, eighth and fourteenth amendments.

8. The prosecutor and trial judge under Florida's bifurcated trial procedure misinformed the jury and impermissibly diminished the juror's understanding of the importance of their role and responsibility in the sentencing phase, in violation of the eighth and fourteenth amendments to the United States Constitution.

9. Mr. Woods was prejudiced when trial counsel unreasonably failed to argue in support of the motion for severance that Mr. Woods's co-defendant's lawyer was his ex-lawyer in this proceeding, and that this conflict of interest denied due process of law, in violation of the sixth, eighth and fourteenth amendments and that conflict, in and of itself, presented a sixth, eighth and fourteenth amendment violation.

6. This motion requested that the state trial court take those steps necessary to assist petitioner in his attempts to ensure the accuracy of the record on appeal.

7. Petitioner raised the following issues on his appeal to the Florida Supreme Court:

1. Confidence in the reliability of the record on appeal was undermined by the state's and the trial court's actions in post-conviction, and Ronnie Woods's sixth, eighth, and fourteenth amendment rights were violated.

2. This court should stay Ronnie Woods's execution because the post-conviction record on appeal is incomplete.

3. Mr. Woods's sixth, eighth and fourteenth amendment rights were violated when the trial court refused to continue the proceedings so that counsel could conduct a reasonable penalty-phase investigation, and/or when counsel unreasonably failed to discover and present critical mitigation evidence. The error also deprived Mr. Woods of a competent mental health evaluation, in violation of the fourteenth amendment (Claim II).

4. Mr. Woods's death sentence was imposed in violation of the eighth amendment—execution of an eighteen-year-old offender, who has the mental age of a twelve year old, is cruel and unusual punishment (Claim I).

On December 9, 1987, the Florida Supreme Court stayed the scheduled execution pending further order of the court. On July 14, 1988, the Florida Supreme Court affirmed the trial court's rulings on the 3.850 petition, and dissolved the December 9, 1987, stay of execution. 531 So.2d 79 (Fla.1988). On October 12, 1988, the Florida Supreme Court denied rehearing of its decision.

On October 17, 1988, the Governor of the State of Florida signed a death warrant scheduling petitioner's execution for the week beginning at noon on Thursday, November 3, 1988, and ending at noon on Thursday, November 10, 1988. Pursuant to the death warrant, the Florida State Prison Superintendent Tom Barton scheduled the execution for Friday, November 4, 1988. On October 19, 1988, the Florida Supreme Court denied petitioner's motion for a stay pending petitioner's filing of a petition for writ of certiorari in the United States Supreme Court. On October 28, 1988, the United States Supreme Court denied petitioner's application for stay of execution of sentence of death pending petitioner's petition for writ of certiorari in that Court. — U.S. ——, 109 S.Ct. 297, 102 L.Ed.2d 317 (1988).

Petitioner filed the instant petition with this Court on November 2, 1988, together with a Motion For Stay Of Execution and a Motion For Leave To Proceed In Forma Pauperis. On November 2, 1988, the state filed its opposition to the petition. The petition presents thirteen claims of alleged constitutional deprivation.[8]

5. Mr. Woods's rights to a fair and impartial trial were violated by the atmosphere at trial which was so pervasively prejudicial that Mr. Woods was denied due process of law, and trial counsel ineffectively presented and/or preserved the issue, in violation of the sixth, eighth, and fourteenth amendments.

6. The jury was instructed that it had to consider Mr. Woods's mental problems, if found, as *aggravating* rather than mitigating circumstances, in violation of the sixth, eighth, and fourteenth amendments (Claim IV).

7. Ronnie Woods should be afforded the opportunity to demonstrate that, with regard to claims V—IX, the facts were unknown to the movant and could not have been ascertained by the exercise of due diligence prior to the end of the thirty (30) day period of Rule 3.851.

8. It was improper for the state to urge, and for the court to consider, the victim's close personal and professional relationship with the prosecution and the court, as a basis for imposition of death, in violation of the sixth, eighth and fourteenth amendments (Claim V).

9. Mr. Woods's rights under the fifth, sixth, eighth and fourteenth amendment rights were violated by the prosecutor's repeated reference to Mr. Woods's decision not to present evidence, and trial counsel's failure to object was not a matter of tactic or strategy, but was unreasonable and prejudicial omission (Claim VI).

10. The trial court improperly relied upon juvenile offenses and prison disciplinary reports in aggravation of punishment, in imposing a sentence of death, and Mr. Woods had no meaningful opportunity to explain how these factors were actually mitigating, in violation of the sixth, eighth and fourteenth amendments.

11. The prosecutor and trial judge under Florida's bifurcated trial procedure misinformed the jury and impermissibly diminished the jurors' understanding of the importance of their role and responsibility in the sentencing phase, in violation of the eighth and fourteenth amendments to the United States Constitution (Claim VIII).

12. Mr. Woods was prejudiced when trial counsel unreasonably failed to argue in support of the motion for severance that Mr. Woods's co-defendant's lawyer was his ex-lawyer in this proceeding, and that this conflict of interest denied due process of law, in violation of the sixth, eighth and fourteenth amendments and that conflict, in and of itself, presented a sixth, eighth and fourteenth amendment violation (Claim 14).

8. Petitioner presents the following claims:

1. Mr. Woods was denied a fair trial in violation of his sixth, eighth, and fourteenth amendment rights, when the state and the trial court refused to remove, or control the presence of, numerous uniformed, armed correctional officers.

2. The prosecutor peremptorily excused black prospective jurors solely based upon their race in violation of the eighth and fourteenth amendments.

3. The court erred in denying Mr. Woods's motions to continue his case, in violation of his sixth, eighth, and fourteenth amendment rights.

4. Mr. Woods's sixth, eighth, and fourteenth amendment rights were violated because the trial court refused to continue the proceedings so that counsel could conduct a reasonable penalty-phase investigation, because counsel unreasonably failed to discover and present critical mitigating evidence, and because, consequently, Mr. Woods was deprived of his rights to a professionally adequate pre-

On November 3, 1988, the Court found that a review of the questions raised in the petition could not be completed in a judicious manner within the short time remaining before the scheduled date of execution.[9] In order to facilitate this Court's

trial mental health evaluation, in violation of the fourteenth amendment.

5. Mr. Woods's death sentence was imposed in violation of the eighth amendment—execution of an eighteen-year-old offender, who has the mental age of a twelve year old, is cruel and unusual punishment.

6. The jury was instructed that it had to consider Mr. Woods's mental problems, if found, as *aggravating* rather than mitigating circumstances, in violation of the sixth, eighth, and fourteenth amendments.

7. Confidence in the reliability of the record on appeal was undermined by the state's and the trial court's actions during the state court proceedings, in post-conviction, and Mr. Woods's sixth, eighth, and fourteenth amendment rights were violated.

8. The trial court erred by failing to consider Mr. Woods's mental deficiencies as mitigating circumstances, which must be considered regardless of whether the mental deficiencies rise to the level of statutory mitigating circumstances, in violation of the sixth, eighth, and fourteenth amendments.

9. It was improper for the state to urge, and for the jury and court to consider, the victim's close personal and professional relationship with the prosecution and the court and other improper factors, as a basis for the imposition of death, in violation of the sixth, eighth, and fourteenth amendments.

10. Mr. Woods's rights under the fifth, sixth, eighth, and fourteenth amendments were violated by the prosecutor's repeated reference to Mr. Woods's decision not to present evidence, and trial counsel's failure to object was not a matter of tactic or strategy, but was an unreasonable and prejudicial omission.

11. The prosecutor and trial judge under Florida's bifurcated trial procedure misinformed the jury and impermissibly diminished the jurors' understanding of the importance of their role and responsibility in the sentencing phase, in violation of the eighth and fourteenth amendments of the United States Constitution.

12. Mr. Woods was prejudiced when trial counsel unreasonably failed to argue in support of the motion for severance that Mr. Woods's co-defendant's lawyer was Mr. Woods's ex-lawyer in this proceeding, and this conflict of interest denied Mr. Woods due process of law, in violation of the sixth, eighth, and fourteenth amendments.

13. The trial court improperly relied upon juvenile offenses and prison disciplinary reports in aggravation of punishment and in imposing a sentence of death, and Mr. Woods had no meaningful opportunity to explain how these factors were actually mitigating, or

to rebut such "evidence," in violation of the sixth, eighth, and fourteenth amendments.

9. On November 2, 1988, this Court entered an order finding that petitioner's Claim VIII appeared to be an unexhausted claim. The Court found that although the petitioner had argued in the state courts that his sentencing was unconstitutional because the sentencer was prevented from considering nonstatutory mitigating evidence, the state courts did not consider this argument in light of *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). The Court found that the *Hitchcock* claim was a sufficient change in the law that Claim VIII was not fairly presented to the state courts and was, therefore, not exhausted under 28 U.S.C. § 2254(b) & (c). *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

The Court then, pursuant to *Thompson v. Wainwright,* 714 F.2d 1495 (11th Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984), gave the respondent the opportunity to notify the Court as to whether or not he wished to waive the exhaustion defense. Respondent notified the Court that he believed Claim VIII was procedurally barred. In the alternative, respondent argued that the claim was exhausted. Finally, respondent stated that if the claim was not exhausted, that respondent would waive the exhaustion defense. On the morning of November 3, 1988, petitioner filed a Motion For Leave To File Response To Respondent's Notice Regarding Hitchcock/Lockett Claim. The petitioner argued that the respondent incorrectly argued that the *Hitchcock* claim was procedurally barred.

The order filed November 3, 1988, stated that if the Court found a *Hitchcock* violation, the Court would then have to address the question whether or not any possible *Hitchcock* violation was harmless beyond a reasonable doubt. *See Clark v. Dugger,* 834 F.2d 1561, 1569–70 (11th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988); *Armstrong v. Dugger,* 833 F.2d 1430, 1436 (11th Cir.1987); *Tafero v. Dugger,* 681 F.Supp. 1531, 1535 (S.D.Fla. 1988); *Cooper v. Dugger,* 526 So.2d 900, 903 (Fla.1988); *Mikenas v. Dugger,* 519 So.2d 601 (Fla.1988). The Court ordered the parties to brief this issue as to the law and the facts of this case.

The Court expressed its displeasure that the parties did not more thoroughly analyze the aforementioned issues in their briefs filed in the state court and this Court. As a matter of comity and federalism as well as for the most efficient administration of justice, this Court would have preferred that these issues have been presented to the state courts in the first instance. A review by the state courts of the

review of these questions and in order to afford the parties their statutory right of appeal to the United States Court of Appeals for the Eleventh Circuit, the Court stayed the execution scheduled for November 4, 1988, and established a briefing schedule. The parties filed various supplemental memoranda. The Court conducted a nonevidentiary hearing on December 20, 1988. The Court will now address petitioner's claims.

## I. Claim I: Jury Intimidation Or Coercion

■ Petitioner first argues that the presence of some forty uniformed and armed correctional officers in the spectators' section of the courtroom during his trial and sentencing intimidated or coerced the jury into finding him guilty and sentencing him to death. Defendant argues that such coercion and intimidation violates his constitutional right to a fair trial under the fourteenth amendment's due process clause.

In *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), the Supreme Court announced the test that federal courts must apply in determining whether or not a particular courtroom scene or arrangement is inherently prejudicial to a defendant in a criminal trial.[10] The Court concluded that the presence of four uniformed, armed state troopers in a courtroom, as a supplement to the state court's security force, did not violate the defen-

dant's constitutional right to a fair trial. *Id.* at 572, 106 S.Ct. at 1347.

The Supreme Court explained that jurors were capable of drawing a wide range of inferences from the presence of armed security guards which were not inherently prejudicial to the defendant's right to a fair trial. *Id.* at 569, 106 S.Ct. at 1346. The Court stated that jurors "are quite aware that the defendant appearing before them did not arrive there by choice or happenstance," and that the Court never required the elimination of every reminder that the state has chosen to marshal its resources against a defendant to punish him for allegedly criminal conduct. *Id.* at 567, 106 S.Ct. at 1345.

After making these observations, the Court found that a federal court's review of a state court conviction on a petition for habeas corpus relief was limited. *Id.*

All a federal court may do in such a situation is to look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to [a] defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.

*Id.* at 572, 106 S.Ct. at 1348. This Court will conduct such a review of the courtroom scene of petitioner's state trial.

harmlessness question would have been particularly helpful in that harmlessness is a mixed question of law and fact. *See Grizzell v. Wainwright,* 692 F.2d 722, 725 (11th Cir.1982), *cert. denied,* 461 U.S. 948, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983). Although the state courts' conclusions as to harmlessness of an error in a sentencing proceeding are not entitled to a presumption of correctness under 28 U.S.C. § 2254(d) and *Sumner v. Mata,* 449 U.S. 539, 545–46, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981), the state courts' findings as to "subsidiary factual questions" are entitled to a presumption of correctness. *See Lightbourne v. Dugger,* 829 F.2d 1012, 1018 (11th Cir.1987), *cert. denied* — U.S. —, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988). Whether or not the evidence establishes a particular mitigating or aggravating factor is entitled to such a presumption of correctness. *See Adams v. Wainwright,* 709 F.2d 1443, 1448

(11th Cir.1983), *cert. denied,* 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984).

10. In *Holbrook,* the defendant Charles Flynn and five co-defendants being tried together were held in custody without bail during trial. 475 U.S. at 565, 106 S.Ct. at 1344. To maintain security during the trial, the court used six customary courtroom security officers, *id.* at 564 & 570, 106 S.Ct. at 1343 & 1346, two deputy sheriffs, *id.* at 570, 106 S.Ct. at 1346, and four uniformed state troopers. *Id.* at 562 & 570, 106 S.Ct. at 1342 & 1346. It was the court's policy to maintain at least two security guards per defendant, however, the court did not have sufficient courtroom security guards available. *Id.* at 564, 106 S.Ct. at 1343. In addition, the court could not have plain clothes troopers due to unavailability and the trooper's union contract. *Id.* at 564–65, 106 S.Ct. at 1343–44.

In this case, it is undisputed that petitioner, while an inmate at the Union Correctional Institution, was tried and convicted for the murder of a correctional officer. Likewise, it is undisputed that during the trial numerous armed correctional officers attended the trial and sat in the spectators' section of the courtroom. Finally, it is undisputed that petitioner moved to have the uniformed security guards excluded from the courtroom during closing argument. Furthermore, the Supreme Court of Florida found the following facts concerning the courtroom scene:

> Union is a small county. Given the number of prisons in that locality, uniformed corrections employees are a commonplace sight. Uniformed spectators caused no disruption [in the courtroom], although they had apparently been present throughout this trial.

*Woods v. State*, 490 So.2d 24, 27 (Fla.1986). The Court presumes these findings of fact correct under 28 U.S.C. § 2254(d).

The Court finds that the most likely inference that the jurors drew from the presence of the correctional officers in the courtroom, was that many correctional officers were co-workers of the victim. The Court finds it highly probable that jurors would have inferred only that the correctional officers would be interested in the trial. The Court finds it highly unlikely that jurors would infer that the correctional officers were present to intimidate them and influence the verdict.[11] The Court, therefore, cannot find the courtroom scene was inherently prejudicial to the petitioner's right to a fair trial or otherwise intimidated or influenced the jury.

Petitioner focuses particular attention on the Supreme Court's statement in *Holbrook* that the threat a "roomful" of security guards could pose to a defendant's right to a fair trial should not be "minimized." *Id.* 475 U.S. at 570–71, 106 S.Ct. at 1347. Unlike *Holbrook*, however, the armed and uniformed persons present at defendant's trial were not deployed by the court to maintain security, but attended the trial voluntarily as spectators. The Court, therefore, finds that there was no inherent prejudice arising from an inference that the defendant was "particularly dangerous or culpable" or that there existed "particular official concern or alarm." *Id.* at 569, 106 S.Ct. at 1346. The Court once again finds it highly unlikely that jurors would draw any inference from the presence of the correctional officers except that the correctional officers were interested in the trial of a defendant accused of murdering a co-worker.

## II. *Claim II: Discriminatory Use Of Peremptory Challenges*

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court reaffirmed the well-established principle that purposeful exclusion of blacks from a jury because of race violated the equal protection clause of the fourteenth amendment. *Id.* at 84, 106 S.Ct. at 1716. The Court also redefined the evidentiary burden that a defendant must satisfy to demonstrate purposeful discrimination. In particular, the Court described a criminal defendant's *prima facie* case of unconstitutional discrimination in the selection of a petit jury as follows:

> To establish such a case, the defendant must first show that he is a member of a cognizable racial group, ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." ... Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

---

11. The Court notes here that petitioner has proffered no evidence, other than the presence of the correctional officers in the courtroom, to support his argument that they intimidated the jury and influenced their verdict. The Court's analysis of juror intimidation is, therefore, limited to an examination of the courtroom scene in this case.

*Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted).[12] *See also United States v. Dennis,* 804 F.2d 1208, 1210 (11th Cir.1986), *cert. denied,* 481 U.S. 1073, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987).

The *Batson* Court stated that a defendant may establish a prima facie case of race discrimination in jury selection based on evidence derived from the jury selection solely in the defendant's case. *Batson,* 476 U.S. at 95, 106 S.Ct. at 1722. The Court has not, however, ruled that any specific set of circumstances would establish an inference of discrimination.[13] The *Batson* Court instead directed trial courts to evaluate "all relevant circumstances." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722. The trial court's conclusion as to the establishment of a prima facie case or as to the existence of discrimination is "'a finding of fact' entitled to appropriate deference by a reviewing court." *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21 (*quoting Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). *See also United States v. Dennis,* 804 F.2d at 1210 n. 22. Such deference is justified due to the necessity of evaluating

credibility of witnesses in making a finding of race discrimination. *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21.

The Supreme Court stated that a prosecutor's statements during voir dire or while exercising his challenges could "support or refute" an inference of discrimination. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. Similarly, the Court stated that proof of a "pattern of strikes" in a particular case could raise an inference of discrimination. *Id.*

A number of courts in the Eleventh Circuit have identified various circumstances other than evidence of a "pattern" of strikes or the prosecutor's statements during voir dire relevant to determining whether or not an inference of discrimination has been established. A prosecutor's leaving black jurors unchallenged on the final jury, a prosecutor's having only a small number of black jurors on the venire from which the jurors are selected, and evidence of non-racial reasons for the prosecutor's challenges, tend to rebut an inference arising solely from an alleged pattern of discriminatory peremptory challenges.[14]

**12.** This Court notes that the second element of the Supreme Court's formulation "constitutes a conclusive presumption rather than a distinct factual inquiry." *United States v. Lewis,* 837 F.2d 415, 417 n. 3 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988). Various panels of the Eleventh Circuit Court of Appeals have apparently reached the same conclusion in reformulating the *Batson* prima facie case. These panels have stated that a defendant must prove: 1) that the defendant is a member of a cognizable racial group; 2) that the prosecutor exercised challenges to exclude members of the defendant's race from the jury; and 3) that an inference may be found that the venirepersons were removed because of race. *Jones v. Davis,* 835 F.2d 835, 837 (11th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988); *High v. Kemp,* 819 F.2d 988, 992 (11th Cir.1987), *cert. granted in part,* —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988). The Eleventh Circuit Court of Appeals has apparently collapsed the second and third prongs of the Supreme Court's formulation of the prima facie case into the element requiring the defendant to establish an inference of discrimination.

**13.** The *Batson* Court did not consider whether or not the defendant had established a prima facie case of discrimination on the facts of that case. Instead, the Court remanded the case for

the trial court to make the determination. *Batson,* 476 U.S. at 100, 106 S.Ct. at 1725. The Court similarly remanded for such a determination in *Griffith v. Kentucky,* 479 U.S. 314, 327–29, 107 S.Ct. 708, 715–16, 93 L.Ed.2d 649, 661–62 (1987).

**14.** In *United States v. Dennis,* 804 F.2d 1208 (11th Cir.1986), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987), the defendant relied exclusively on an alleged pattern of discriminatory peremptory challenges to create an inference of discrimination. The court did not find an inference of discrimination where 1) the prosecutor used two of three peremptory challenges to strike black jurors, 2) the prosecutor did not use three of his six peremptory challenges, 3) the prosecutor used one of his allotted peremptory challenges in selecting alternate jurors to strike an alternate juror who was black, 4) the prosecutor allowed two black jurors to remain on the final jury panel, and 5) there was evidence that one of the stricken jurors was a victim of a burglary and another was a government witness in the past. *Id.* at 1210–11. The court did not describe the racial composition of the entire jury venire. Instead, the court found that any inference of discrimination was undercut by the presence of two black jurors on the panel who remained unchallenged by the prosecutor. *Id.* at 1211.

In this case, the court reporter at petitioner's trial failed to record the bench conferences where the parties exercised their peremptory challenges. *Woods v. State*, 490 So.2d 24, 25 n. 2 (Fla.1986). On petitioner's appeal to the Florida Supreme Court, the court relinquished jurisdiction for the parties to reconstruct the record. *Id.* Based on the reconstructed record, the court found and the parties agreed that voir dire in petitioner's case included nine black prospective jurors. *Id.* at 26. The court found that the state exercised peremptory challenges against five of the nine black prospective jurors, petitioner and his co-defendant exercised one peremptory challenge against a black prospective juror each, the court excused one prospective black juror for cause, and the ninth black prospective juror served as an alternate juror. *Id.* The court found that two of the black jurors peremptorily excused by the prosecutor, expressed their general reluctance to participate in deciding the case. *Id.* The court found no reason for the exclusion of the remaining three jurors, but found that petitioner failed to demonstrate a substantial likelihood that the state exercised its peremptory challenges solely on the basis of race. *Id.*

The record of the hearing on remand to the state trial court demonstrates various additional facts surrounding the prosecutor's exercise of peremptory challenges. The record reflects that the court excused fourteen people for cause, the state excused a total of thirteen peremptorily, and the defendants peremptorily excused fifteen between them. Transcript of Proceedings in the Circuit Court of Florida, Eighth Judicial Circuit, In and For Union County [hereinafter "Tr."] at 13.

Given that there were twelve persons on the jury and two alternates, the Court finds that there were fifty-six potential jurors in the jury pool. The prosecutor testified that the entire venire from which the jury was selected constituted 120 persons. Tr. at 32. In addition to the nine black prospective jurors, twelve to twenty-four of the original venire who were not prospective jurors were black. Tr. at 30. The prosecutor stated that the defendants could have used unexercised peremptory challenges to have additional black persons become prospective jurors. Tr. at 30.

The prosecutor had been allotted twenty-four peremptory challenges. Tr. at 28. The defendants had been allotted ten or twelve each. Tr. at 28 and 50. Thus, it appears that the prosecutor had eleven peremptory challenges that he did not use.

The prosecutor testified as to how he rated prospective jurors. In particular, he stated that he wanted 1) jurors who were not sympathetic to the retaliation defense, Tr. at 21; 2) jurors who were not philosophically opposed to the death penalty, Tr. at 20–21; 3) jurors who did not have an adverse reaction to law enforcement, Tr. at 21; 4) jurors who were analytical and would not take offense at having witnesses called liars, Tr. at 23; 5) jurors who are members of churches that are opposed to the death penalty, Tr. at 24; 6) jurors who were "employee types," "deadbeats," or alcoholics, Tr. at 25; and 7) jurors whose body language or answers to questions bothered the prosecutor, Tr. at 31. Based on these characteristics, the prosecutor assigned the jurors either a one, for a desir-

In *United States v. David,* 662 F.Supp. 244, 246 (N.D.Ga.1987), *aff'd on other grounds,* 844 F.2d 767 (11th Cir.1988), the defendant relied on an inference arising solely from an alleged "pattern" of peremptory challenges. The district court found that the defendant had not established a prima facie case of discrimination where three of the twenty-eight jurors on the panel were black. In that case, the prosecutor used two of six peremptory challenges to strike black jurors. In the selection of alternates from a separate three-member alternate panel, two of whom were black, the prosecutor used a peremptory challenge to strike a black juror.

A prosecutor's failure to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a prima facie case. *United States v. David,* 803 F.2d 1567, 1571 (11th Cir.1986). A single strike of a black juror, however, for racial reasons violates the equal protection clause, even where other black jurors are seated and even when there are valid reasons for the striking of some black jurors. *United States v. Gordon,* 817 F.2d 1538, 1541 (11th Cir.1987), *vacated in part on other grounds,* 836 F.2d 1312 (11th Cir.), *cert. dismissed,* —— U.S. ——, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988).

able juror; a two, for a juror for whom the prosecutor had no opinion; and a three, for an undesirable juror. Tr. at 26. The prosecutor had retained his notes as to his ratings of many of petitioner's prospective black jurors, but retained no notes as to others. The prosecutor rated both whites and blacks as threes. Tr. at 27.

The five black prospective jurors peremptorily excused by the prosecutor were Catherine Hadley, Thoretta Gibson, Joyce Bethea, Glenda Stewart, and Harvey Thomas.[15] Hadley was rated a three but the prosecutor did not remember why he gave her such a rating. Tr. at 37. It appears from the transcript of voir dire, however, that Hadley had in-laws who worked for the Department of Corrections. Record on Appeal to the Florida Supreme Court, Volume V, [hereinafter "RA"] at 61. It further appears that Hadley worked for the Department of Corrections at one time. RA at 144. In addition, she had expressed reservations about the death penalty, RA at 74, and reluctance about participating as a juror.[16] RA at 77. She repeatedly stated her confusion about serving as a juror. RA at 77. Although the record indicates that at one point the trial judge excused Hadley for cause, RA at 77–78, this ruling was apparently rescinded and the prosecutor thereafter used a peremptory challenge to have her excused.

Thoretta Gibson was rated a three because the prosecutor had been involved as a prosecutor with members of her family. Tr. at 37. In addition, it appears that Gibson's daughter worked for the Department of Corrections. RA at 68.

Joyce Bethea was unrated and the prosecutor did not remember why he assigned her such a rating. Tr. at 38. Bethea expressed her reluctance to serve on the jury. RA at 264.[17]

Glenda Fay Stewart was unrated, and the prosecutor stated no reason for such a rating. Tr. at 38. During voir dire, Stewart stated that she and relatives of hers had worked for the Department of Corrections, RA at 316; she had heard about and discussed the case based on having seen two television reports, RA at 287; and she had recently served on a grand jury which ran for six months. RA at 319.

Harvey Thomas was rated a three, but the prosecutor did not state a reason for such a rating. Tr. at 39. It appears from the record on voir dire that Thomas had heard about the murder when it happened. RA at 409. In addition, Thomas had worked for the Department of Corrections. RA at 410.

▆▆▆ The findings of the Florida Supreme Court as to the prosecutor's reasons for excusing black jurors are subsidiary factual findings and are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d) and *Sumner v. Mata*, 449 U.S. 539, 545–46, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981). The court's conclusion that petitioner failed to demonstrate that the state exercised its peremptory challenges solely on the basis of race is a mixed question of law and fact and is not entitled to a presumption of correctness. Based on the subsidiary facts found by the Florida Supreme Court and the reconstructed record of the peremptory challenges, this Court will apply the three-part test announced in *Batson*.[18]

---

**15.** Maybelle Webb was a black juror who served as an alternate. Tr. at 16. Ella Jane Perry was a prospective black juror excused by the petitioner. Cathy Watkins was excused for cause by the prosecutor. *Woods,* 490 So.2d at 26 n. 3. Petitioner's co-defendant Bean excused a prospective black juror. *Id.* at 26.

**16.** This is apparently one of the two jurors whom the Florida Supreme Court found was excused for a race neutral reason. This finding is entitled to a presumption of correctness.

**17.** This is apparently the second of the two jurors whom the Florida Supreme Court found

was excused for a race neutral reason. This finding is entitled to a presumption of correctness.

**18.** The Court notes that none of the state courts had the opportunity to apply *Batson* to petitioner's case. *Batson* was decided by the United States Supreme Court on April 30, 1986. The Supreme Court of Florida affirmed petitioner's conviction and sentence on April 24, 1986, without either party bringing *Batson* to the court's attention. The Court notes, however, that petitioner raised *Batson* on a motion for rehearing before the Florida Supreme Court which the court summarily denied.

**598**

■ The Court finds it undisputed that petitioner is black, that he is a member of a cognizable racial group, and that the prosecutor used peremptory challenges to excuse five members of petitioner's race. The Court finds from all the circumstances, however, that petitioner has not established an inference of discriminatory use of peremptory challenges. The prosecutor had sufficient cause for excusing prospective jurors Hadley and Bethea for their reluctance in serving on the jury. The prosecutor also had sufficient cause to excuse prospective juror Gibson due to having been involved as a prosecutor with members of her family. The prosecutor also had sufficient cause to excuse Stewart and Thomas due to their prior knowledge of the case. Accordingly, the Court finds that petitioner has failed to establish a prima facie case under *Batson*.

■ Even if a prima facie case were established, the prosecutor effectively rebutted the prima facie case during the state evidentiary hearing. He set out his system for rating jurors and explained how he applied that system in this particular case as to three of the prospective black jurors. Although he did not assign a rating to Joyce Bethea and Glenda Fay Stew-

art and could not remember why he excused them, Tr. at 40, the evidence in the record demonstrates sufficient reasons for his actions. In addition, as to Joyce Bethea, the Supreme Court of Florida found that Bethea was excused due to her reluctance to serve on the jury. This Court must presume that factual finding to be correct.[19]

■ In addition, the prima facie case tends to be rebutted based on the finding of the state trial judge. *See* RA at 54. The Supreme Court of the United States stated that the factual findings of the trial judge are to be given appropriate deference in light of the necessity for making credibility determinations.[20]

■ Petitioner argues that he is entitled to an evidentiary hearing to rebut the finding that the prosecutor did not discriminate on the basis of race. The Court finds, however, that petitioner has proffered no facts at variance with the facts considered by the state courts, or shown that the state courts have not given petitioner a full and fair opportunity to develop the facts in this case so as to justify an evidentiary hearing. *See Townsend v. Sain,* 372 U.S. 293, 312–

The Court also notes that although the state courts did not have the opportunity to apply *Batson* to petitioner's case, petitioner's conviction was not "final." *Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712 n. 6, 93 L.Ed.2d 649, 657 n. 6 (1987); *Allen v. Hardy,* 478 U.S. 255, 258 n. 1, 106 S.Ct. 2878, 2880 n. 1, 92 L.Ed.2d 199 (1986). Accordingly, *Batson* may be applied retroactively to petitioner's conviction. *Griffith,* 479 U.S. at 327–29, 107 S.Ct. at 715–16, 93 L.Ed.2d at 661–62.

**19.** The prosecutor's failure to articulate an objective reason for exercising a peremptory challenge on remand will not necessarily render a conviction void so long as the totality of the circumstances do not support an inference of discrimination. *See United States v. David,* 803 F.2d 1567, 1571 (11th Cir.1986); *United States v. Forbes,* 816 F.2d 1006, 1011 n. 7 (5th Cir.1987).

**20.** Even if petitioner had established a discriminatory use of peremptory challenges, that error is harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 21–24, 87 S.Ct. 824, 826–28, 17 L.Ed.2d 705 (1967). *Cf. Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *United States v. Thomp-*

*son,* 827 F.2d 1254, 1261 (9th Cir.1987). Although discrimination by the prosecutor is unquestionably a constitutional violation and undermines the appearance of fairness in the system of justice, constitutional violations do not necessarily render a state prosecution void if the result would remain unaffected by the violation beyond a reasonable doubt. Any possible discrimination by the prosecutor in this case would not have altered the jury's verdict in light of the overwhelming evidence of petitioner's guilt as well as the existence of two aggravating circumstances that support the jury's recommendation of death in this case.

Although four members of the Supreme Court have stated that harmless error analysis would not apply to systematic exclusion of black persons from a grand jury, *see Vasquez,* 474 U.S. at 263–64, 106 S.Ct. at 623–24, four members of the Court stated that harmless error analysis would apply. *See* 474 U.S. at 268, 106 S.Ct. at 626 (Powell dissenting, joined by Burger and Rehnquist); 474 U.S. at 264 n. 6, 106 S.Ct. at 624 n. 6 (Justice White specifically did not join Part III, paragraph 6 of opinion of Justice Marshall). Justice O'Connor stated no view on the issue in her concurrence in the judgment of the Court. *See* 474 U.S. at 266–67, 106 S.Ct. at 625–26.

13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963); 28 U.S.C. § 2254(d).

### III. *Claim III & IV: Denial Of Motions For Continuance*

■ Petitioner contends in Claim III that his attorney did not have adequate time to prepare for trial and in Claim IV, he claims that his attorney did not have adequate time to prepare for sentencing. The Florida Supreme Court addressed these questions together on direct appeal and found no constitutional violation. The Court found that the trial court had granted Woods's one motion for continuance and that nine weeks was sufficient time for counsel to prepare for trial and sentencing. This Court also finds that petitioner had adequate time to prepare for both trial and sentencing and that there was no sixth, eighth, or fourteenth amendment violation due to the trial court's denial of petitioner's motions for continuance.

To the extent that Claim IV is one for ineffective assistance of counsel for counsel's failure to discover and present mitigating evidence, the Court finds that petitioner has failed to overcome the presumption that his attorney rendered him effective assistance. In particular, petitioner has failed to show 1) that counsel has committed serious mistakes and 2) that the deficient representation prejudiced petitioner. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

■ Petitioner contends that counsel's failure to produce petitioner's Hillsborough County School Records and Evaluations and the Hillsborough County Hospital Records and Psychological Screening Reports, and counsel's failure to make these records available to the medical expert constitute serious mistakes. This Court disagrees in light of the testimony concerning petitioner's mental health by Dr. Harry Krop and the testimony of petitioner's childhood by his mother. Counsel's preparation of Dr. Krop and his presentation to the sentencing jury were proper and counsel committed no serious mistakes. The

allegedly deficient representation did not prejudice defendant.

### IV. *Claim V: Execution Of Eighteen Year Old*

■ Under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a state court finding of procedural default bars federal court review of the claim on a petition for writ of habeas corpus absent a showing of cause and prejudice to excuse the default. Petitioner raised Claim V first before the state trial court in his motion for postconviction relief under Fla.R.Crim.P. 3.850. The trial court appeared to deny the claim finding that petitioner had failed to support this claim with adequate statutory and case law. The Florida Supreme Court, on appeal, found the claim should have been brought on direct appeal and that it was, therefore, procedurally barred from postconviction consideration. This Court finds that petitioner has failed to demonstrate cause for failure to raise the claim on direct appeal.

### V. *Claim VI & VII: Errors In Transcript*

■ On the 3.850 proceeding, the state trial court conducted an evidentiary hearing to determine whether or not it had instructed the sentencing jury to consider petitioner's extreme mental or emotional disturbance as an aggravating circumstance as was indicated in the transcript of the sentencing. The trial court found that the transcript was in error and that the court had properly instructed the jury to consider the factor as a mitigating factor. The Florida Supreme Court affirmed this factual finding.

This Court must presume that the state court finding is correct pursuant to 28 U.S. C. § 2254(d). This Court rejects petitioner's argument in Claim VI that the evidentiary hearing on the issue was not full, fair, and adequate to determine the factual issue. The trial court listened to a tape of the proceeding. It was unnecessary for the court to also examine the court reporter's stenographic notes or to place the court reporter on the witness stand for

petitioner to cross-examine. Because the Court has found no error in the transcript, this Court also finds no basis on which to find the entire transcript of the trial and sentencing unreliable as petitioner suggests in Claim VII.

## VI. *Claim VIII: Hitchcock Claim*

### A. Exhaustion

 In this case, it appears that the state courts did not have the opportunity to apply *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), to petitioner's case. This claim was originally raised on direct appeal to the Florida Supreme Court. That court found no error in petitioner's sentencing on April 24, 1986. *Hitchcock* was not decided until April 22, 1987. The claim was not subsequently raised on petitioner's 3.850 motion.

Because the claim was not "fairly presented" to the state courts, this Court finds that the petition contains unexhausted claims. *See Davis v. Dugger*, 703 F.Supp. 916 (M.D.Fla.1988). Petitioner's petition is, therefore, mixed. The exhaustion defense may, however, be waived by the state. *See Thompson v. Wainwright*, 714 F.2d 1495 (11th Cir.1983), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984). If the Court in its discretion accepts the waiver, the Court may address the issue.

 In this case, the state has unequivocally waived its exhaustion defense. The Court must, therefore, consider whether or not to accept the waiver. In *Davis v. Dugger*, 703 F.Supp. 916 (M.D.Fla.1988), this Court refused to accept respondent's waiver of the exhaustion defense. The Court did not accept the state's waiver 1) because of the possibility that judicial findings of fact would be required in order to address the *Hitchcock* claim and a possible harmlessness analysis, 2) because the state courts had not had sufficient time to develop their jurisprudence on *Hitchcock* claims, 3) because exhaustion would not have been a formality, 4) because exhaustion would take only a short length of time, and 5) because the state court's dockets were less crowded than the docket of this Court.

Although many of the same factors apply in this case, other factors support acceptance of the state's waiver. In particular, this Court finds that the *Hitchcock* claim in this case concerns only the state judge's failure to consider nonstatutory mitigating circumstances, and not the jury's failure to consider such nonstatutory mitigating circumstances. The Court, therefore, need not conduct an extensive review of the record of the sentencing in this case as would be required if this Court were analyzing the jury's consideration of nonstatutory mitigating circumstances. Because the judge's consideration of mitigating and aggravating circumstances is crystalized in the sentencing judgment, this Court's *Hitchcock* analysis is greatly simplified. Factual findings by the state court would not aid this review. The *Hitchcock* claim in this case appears to be a question of law that this Court may address quickly and without offending policies of comity and federalism. This Court will, therefore, accept the state's waiver of its exhaustion defense.

### B. Hitchcock

 It is well-established that under the eighth and fourteenth amendments, a sentencing body "may not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978); *Messer v. State of Florida*, 834 F.2d 890 (11th Cir.1987). *See also Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Skipper v. South Carolina*, 476 U.S. 1, 4, 106 S.Ct. 1669, 1670, 90 L.Ed.2d 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 113–14, 102 S.Ct. 869, 876–77, 71 L.Ed. 2d 1 (1982). The Eleventh Circuit has held that there is *Lockett* error in Florida's sentencing scheme where the advisory jury or the sentencing judge fails to consider mitigating evidence offered by the defendant. *See Messer v. State of Florida*, 834 F.2d 890, 892 (11th Cir.1987) (*citing Riley v.*

*Wainwright,* 517 So.2d 656 (Fla.1987)) [21] *Armstrong v. Dugger,* 833 F.2d 1430, 1435 n. 6 (11th Cir.1987); *Magill v. Dugger,* 824 F.2d 879 (11th Cir.1987). [22]

To determine whether or not the advisory jury or sentencing judge has failed to consider mitigating evidence offered by the defendant, the courts have reviewed the entire sentencing proceeding including the arguments of counsel, the court's instructions to the jury, and the sentencing judge's written findings. *See, e.g., Hargrave v. Dugger,* 832 F.2d 1528, 1534 (11th Cir.1987) (en banc); *Messer v. State of Florida,* 834 F.2d 890, 893 (11th Cir.1987). The Court must then infer from the entire record not only whether the advisory jury and the sentencing judge were prevented from being presented with all relevant mitigating evidence, but whether or not the jury and the court were prevented from or otherwise failed to consider all relevant mitigating evidence. *Harich v. Wainwright,* 813 F.2d 1082, 1101 (11th Cir.1987), *incorporated by reference en banc, Ha-*

*rich v. Dugger,* 844 F.2d 1464, 1469 (11th Cir.1988) (en banc).

The Supreme Court performed such an analysis in *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). [23] The Eleventh Circuit Court of Appeals has stated that a *Lockett* claim similar to the one raised in *Hitchcock* should be determined by matching the record in the case under consideration with the record in *Hitchcock.* [24] *Hargrave v. Dugger,* 832 F.2d 1528, 1534 (11th Cir.1987 (en banc). The Court will now perform such an analysis.

In this case, petitioner does not argue that the jury was prevented from considering nonstatutory mitigating circumstances, but that the judge failed to consider nonstatutory mitigating circumstances. The Court need not summarize the entire sentencing proceeding. The state trial judge stated his entire consideration of mitigating circumstances in his sentencing judgment as follows:

---

**21.** The Florida Supreme Court has stated that "the standards imposed by *Lockett* bind both the judge and the jury under our law.... If the jury's recommendation, upon which the judge must rely, results from an unconstitutional procedure, then the entire sentencing process necessarily is tainted by that procedure." *Riley v. Wainwright,* 517 So.2d 656, 659 (Fla.1987).

**22.** One Eleventh Circuit panel had concluded that preclusion of the jury from considering nonstatutory mitigating factors was not erroneous so long as the sentencing judge did consider all the nonstatutory mitigating factors. *Elledge v. Dugger,* 823 F.2d 1439, 1449 (11th Cir.1987). That panel subsequently withdrew that portion of the opinion apparently to resolve the inconsistency with other panels. *Elledge v. Dugger,* 833 F.2d 250, 250 (11th Cir.1987).

**23.** The Supreme Court summarized its holding as follows:

It could not be clearer that the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of nonstatutory mitigating circumstances, and that the proceedings therefore did not comport with the requirements of *Skipper v. South Carolina,* 476 U.S. 1, 90 L.Ed.2d 1, 106 S.Ct. 1669, (1986), and *Lockett v. Ohio,* 438 U.S. 586, 57 L.Ed.2d 973, 98 S.Ct. 2954, 9 Ohio Ops.3d 26 (1978) (plurality opinion). Respondent has made no attempt to argue that this error was harmless, or that it had no effect on

the jury or the sentencing judge. In the absence of such a showing, our cases hold that the exclusion of mitigating evidence of the sort at issue here renders the death sentence invalid.
481 U.S. at 398–99, 107 S.Ct. at 1824, 95 L.Ed.2d at 353.

**24.** The *Messer* panel summarized the material facts of *Hitchcock* as follows:

[In *Hitchcock* ], the defense attorney had introduced some nonstatutory mitigating evidence, and although his stress in closing argument was on statutory mitigating circumstances, he also referred to several nonstatutory mitigating factors and invited the jury to consider "the whole ball of wax." By contrast the prosecutor's closing argument told the jury to consider the mitigating circumstances by number, and then went down the statutory list one by one. In addition, the trial judge instructed the jury that " '[t]he mitigating circumstances you may consider shall be the following ...' (listing the statutory mitigating circumstances)." *Id.* 107 S.Ct. at 1824. Imposing the death sentence, the sentencing judge found that "there [were] insufficient mitigating circumstances as *enumerated in Florida Statute 921.141(6)* to outweigh the aggravating circumstances." *Id.* (Emphasis in the Supreme Court text which quotes the trial record).
*Messer,* 834 F.2d at 893.

Mitigating circumstances set out in Florida Statute § 921.141(6)(a, b, c, d, e, and f) do not apply in this case.

Mitigating circumstances set out in Florida Statute § 921.141(6)(g) does apply in this case. The Defendant Woods was eighteen years of age at the time of the offense.

Although evidence was presented at the penalty phase in an effort to show that the mitigating circumstances set out in § 921.141(6)(f) applied to the Defendant, the evidence consisted essentially of test results that indicated a low intelligence quotient of the Defendant. The evidence was insufficient to find that the capacity of the Defendant to appreciate the criminality of his conduct to the requirements of law was substantially impaired. Therefore, this Court rejects that as a mitigating circumstance in this case.

RA at 665.

The sentencing judgment indicates that the state trial judge in this case committed the same error as did the state trial judge in *Hitchcock*.[25] Although the judge considered the evidence presented by petitioner, he considered this evidence only to the extent that the evidence tended to establish statutory mitigating factors. For example, the judge would not consider the evidence of petitioner's mental capacity except to the extent that the evidence showed insanity. Such a limitation of the judge's consideration of the evidence violates *Hitchcock*.[26]

This Court cannot find the judge's error harmless beyond a reasonable doubt. *See Knight v. Dugger*, 863 F.2d 705 (11th Cir. 1988). The Court will, therefore, order the state trial judge to resentence petitioner.

■ The trial judge shall consider all the evidence presented at petitioner's original sentencing proceeding as well as the

jury's recommendation of death and shall prepare a new sentencing judgment comporting with the requirements of *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). Because the jury was properly instructed to consider all the evidence to the extent that the evidence established any mitigating circumstances, it is unnecessary for the state to conduct an evidentiary hearing. Petitioner's sentencing hearing fully and fairly developed the factual record for petitioner's sentencing.

### VII. *Claims IX, X, XI, XII, And XIII: Procedural Default*

■ Petitioner attempted to add these five claims to his 3.850 motion, by amendment, on the day the trial court held the evidentiary hearing on the single claim in the original 3.850 motion. The trial court denied the motion stating that petitioner could have raised those claims in his original 3.850 motion. The claims could have been raised within the time period allowed for the 3.850 petition. The trial court found that allowing petitioner to amend his original and file a new motion would circumvent the policy of finality which the procedure was created to promote.

The Florida Supreme Court on review found that the five additional claims were time barred under rule 3.851. Also, the Court found that because none of these five claims had been raised on direct appeal by petitioner, the claims were procedurally defaulted.

Petitioner has not attempted to address the cause and prejudice test articulated in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to overcome the procedural default of Claims IX, X, XI, XII, and XIII. Because no excusable cause was presented, this Court must dismiss those claims with prejudice. As to Claim

---

**25.** The *Hitchcock* Court described the state trial judge's consideration of nonstatutory mitigating circumstances as follows. "In determining whether the defendant should be sentenced to death or life imprisonment, this Court is mandated to apply the facts to *certain enumerated* 'aggravating' and 'mitigating' circumstances. 10 Record 195 (emphasis added). The only mitigating circumstance he found was petitioner's

youth. Id., at 197." *Hitchcock*, 481 U.S. at 398, 107 S.Ct. at 1824, 95 L.Ed.2d at 353.

**26.** The Court notes that the state trial judge apparently complied with the law on mitigating circumstances at the time and did not have the benefit of the Supreme Court's decision in *Hitchcock*.

XI, the *Caldwell* claim, even if it were not procedurally defaulted, the Court finds no error on the merits, as will be discussed.

### VIII. *Claim XI: Caldwell*

■ A *Caldwell* violation occurs when the sentencer is led to believe that "the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Caldwell v. Mississippi,* 472 U.S. 320, 328–29, 105 S.Ct. 2633, 2639–40, 86 L.Ed.2d 231 (1985). The Court in *Caldwell* believed that the sentencing jury must be aware of "the gravity of the task" at hand, and they must proceed with "appropriate awareness of its truly awesome responsibility". *Id.* at 341, 105 S.Ct. at 2646.

The Eleventh Circuit found a *Caldwell* violation in *Mann v. Dugger,* 844 F.2d 1446, 1455 (11th Cir.1988), when the prosecution repeatedly told the jury that the decision to impose the death penalty was "not legally on your shoulders." [27] The Eleventh Circuit found that the trial judge's comments did not cure the impression which the prosecution had made on the jury. *Id.* at 1458. The court held that the effect was to "diminish the jury's sense of responsibility with regards to its sentencing role." *Id.*

In *Adams v. Wainwright,* 804 F.2d 1526 (11th Cir.1986), *cert. granted,* —— U.S. ——, 108 S.Ct. 1106, 99 L.Ed.2d 267 (1988), the Eleventh Circuit found a *Caldwell* violation because the trial court led the jury to believe that moral responsibility for imposing the death penalty rested solely on the court. The judge told the jury that "this conscience part of it is as to whether or not you're going to put the man to death or not, that is not your decision to make." *Id.* at 1529. The Eleventh Circuit remanded the case for a new sentencing.

By contrast, the Eleventh Circuit found no *Caldwell* violation in *Harich v. Dugger,* 844 F.2d 1464, 1473 (11th Cir.1988). The court in *Harich* stated that:

We believe the Supreme Court intended that a *Caldwell* violation should include some affirmative misstatements or misconduct that misleads the jury as to its

role in the sentencing process. *Caldwell* does not mandate reversal if an *advisory* jury is told that its role is to advise or recommend.

*Id.* at 1473. The Eleventh Circuit examined the alleged errors in the instructions and determined that no *Caldwell* violation had occurred.

This Court finds many similarities when comparing the instructions given to the jury in *Harich,* and those given in the instant case. For example, petitioner points to the following remarks the trial judge made to the jury once the jury had been picked:

I will now inform you of the maximum and minimum possible penalties in this case. The penalty is for the court to decide. You are not responsible for the penalty in any way because of your verdict. The possible results of this case are to be disregarded as you discuss your verdict. Your duty is to discuss only the question of whether the State has proved the guilt of the defendants in accordance with these instructions.

RA at 1458–1460. The state trial judge in *Harich* made the same remarks to the jury. *Harich,* 844 F.2d at 1474. The Eleventh Circuit quoted those remarks by the state trial judge and concludes that it did not constitute a *Caldwell* violation.

Petitioner cites to another passage as a violation of *Caldwell:* "The final decision as to what punishment shall be imposed, rests solely with the Judge of this Court." RA at 1519. The *Harich* court cites verbatim the same sentence. *Harich,* 844 F.2d at 1474.

Petitioner quotes another passage from his trial which the trial judge recited to the jury before they retired to determine petitioner's sentence:

As you have been told, the final decision, as to what punishment shall be imposed, is the responsibility of the judge; however, it is your duty to follow the law that will now be given to you by

---

**27.** The prosecutor repeated this during voir dire questioning, during his closing arguments at the guilt/innocence phase of the trial, and during his closing arguments at the sentencing hearing.

the Court and render to the Court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty, and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.

RA at 1665. Again, the Eleventh Circuit quotes verbatim the same passage in *Harich*. *Harich*, 844 F.2d 1474.

The Eleventh Circuit found no *Caldwell* violation in *Harich*. *Id.* at 1475. The comments made by the trial judge and the prosecution, the court concluded, did not mislead the jury "as to the importance of its advisory role." *Id.* The comments permissibly explained the correct role of the jury and the judge in the sentencing phase. *Id.*

This Court finds after reviewing the comments made by the trial judge and the prosecution in the instant case, that those comments were identical to those approved by the Eleventh Circuit in *Harich*. This Court must follow the rulings of the Eleventh Circuit and finds no *Caldwell* violation in the instant case.

Accordingly, it is

ORDERED:

1. That the Petition for Writ of Habeas Corpus By Person In State Custody, filed by Ronald Woods, a death row inmate at Florida State Prison, on November 2, 1988, is granted in part and denied in part.

2. That the state trial judge shall within 180 days of the date of this order resentence petitioner considering all the evidence presented at petitioner's original sentencing proceeding as well as the jury's recommendation of death, and the state trial judge shall then prepare a new judgment and sentence for petitioner that comports with the requirements of *Hitchcock v. Dugger*.

3. That in all respects other than the one stated in paragraph two of this order, the Petition for Writ of Habeas Corpus By Person In State Custody, filed by Ronald Woods, a death row inmate at Florida State Prison, on November 2, 1988, is denied.

4. That this Court's November 3, 1988, order staying petitioner's execution is hereby dissolved.

5. That the Clerk of Court shall enter a judgment granting the petition for writ of habeas corpus to the extent that the state trial judge shall within 180 days of the date of this order resentence petitioner in accordance with *Hitchcock v. Dugger* and this Court's order, and denying the petition for writ of habeas corpus on all other claims.

DONE AND ORDERED.

## ON MOTION TO ALTER OR AMEND JUDGMENT

This case is before the Court on respondent's Motion To Alter Or Amend Judgment, filed on March 6, 1989, and petitioner's Motion To Alter And Amend Judgment And For Entry Of New Judgment, filed on March 6, 1989.

The Court will deny each motion. The Court will, however, pause to note that the state has for the first time cited a case that is in many respects similar to the case at bar. In *Daugherty v. Dugger*, 839 F.2d 1426, 1432 (11th Cir.1988) the sentencing judge instructed the jury to consider nonstatutory mitigating circumstances and stated in his sentencing order that he had considered "all the evidence." Although the sentencing judge did not state specifically that he found no nonstatutory mitigating circumstances, the court of appeals inferred from the sentencing judge's statements and his correct instruction to the jury that the he had considered all nonstatutory mitigating circumstances in rendering his sentence. *Id.*

The Court has reexamined the entire record and finds the instant case distinguishable from *Daugherty v. Dugger*, 839 F.2d 1426, 1432 (11th Cir.1988). Although the sentencing judge apparently heard all the evidence presented by the petitioner at the sentencing and permitted the jury to

consider the evidence, the Court finds that the sentencing judgment indicates that the judge considered the evidence only to the extent that the evidence established statutory mitigating factors.[1] Such was apparently not the case in *Daugherty* where the sentencing judge stated that he had considered "all the evidence." Furthermore, the sentencing judge in the instant case made no statements that would indicate that he considered all the evidence to the extent that the evidence established nonstatutory mitigating factors. Accordingly, the sentencing judge's consideration of the evidence violates *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

Accordingly, it is

ORDERED:

1. That respondent's Motion To Alter Or Amend Judgment, filed on March 6, 1989, is denied

2. That petitioner's Motion To Alter And Amend Judgment And For Entry Of New Judgment, filed on March 6, 1989, is denied.

DONE AND ORDERED.

---

1. The strongest indication that the sentencing judge considered the evidence only to the extent that the evidence established a statutory mitigating factor was the judge's discussion of the evidence of mental incapacity. The judge's analysis was as follows:

> Although evidence was presented at the penalty phase in an effort to show that the mitigating circumstance set out in § 921.141(6)(f) applied to the Defendant, the evidence consisted essentially of test results that indicated a low intelligence quotient of the Defendant. The evidence was insufficient to find that the capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. Therefore, this Court rejects that as a mitigating circumstance in this case.

Sentencing Judgment at 3. This Court cannot find from this analysis that the sentencing judge considered the evidence to the extent that it established nonstatutory factors.