NOT DESIGNATED FOR PUBLICATION

No. 115,354

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER BRYON VOLLE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed December 23, 2016. Affirmed.

*Debra J. Wilson*, of Capital Appeals and Conflicts Office, for appellant.

*Klint Spiller*, legal intern, *Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and HILL, JJ.

POWELL, J.: Christopher Bryon Volle appeals the district court's revocation of his probation and imposition of his underlying sentence. Volle was placed on probation after having pled no contest to two counts of aggravated battery, which were the result of a disturbance involving his wife. Several months later, after threatening his now ex-wife, Volle was arrested and the State sought to revoke his probation. After a hearing, the district court revoked Volle's probation and imposed the underlying prison sentences, in part on the grounds that Volle's military training made him a public safety threat. While we disagree with the district court that under the facts presented Volle's military training

1

made him a public safety threat, because there were other grounds supporting the revocation of Volle's probation, the district court did not abuse its discretion and, therefore, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2015, Volle pled no contest to two counts of aggravated battery against his wife, Stephanie Volle. In exchange for Volle's plea, the State agreed to dismiss five additional counts and recommend probation. The district court sentenced Volle to consecutive sentences of 36 months and 32 months respectively, for a total of 68 months' imprisonment. After taking into account Volle's military service and other factors, the district court placed him on probation for 36 months.

In December 2015, Volle telephoned Stephanie, now his ex-wife, and during the ensuing argument yelled at Stephanie and threatened to kill her and her family members. Stephanie, concerned for her safety, called the police. That same day, Volle met with a cousin in Atchison County, Kansas. Volle showed his cousin a knife and asked her about certain people. Volle's cousin was concerned that Volle might hurt someone, but she did not contact law enforcement. Volle was later found sitting in his car and was arrested on a warrant for the new charges filed in Shawnee County resulting from his threats to Stephanie. After Volle's arrest, an Atchison County Sheriff's Deputy contacted and met with Volle's cousin, who told the deputy that Volle had threatened to hurt a man and that Volle had trash bags, plastic wrap, gloves, duct tape, zip ties, and a large machete-type knife in his car. Deputies found many of these items in Volle's car.

The State moved to revoke Volle's probation on the basis that Volle had failed to remain a law abiding citizen, failed to refrain from having violent contact with Stephanie, and left Shawnee County without prior approval. After an evidentiary hearing at which the State presented evidence of Volle's probation violations, the district court found Volle

2

had violated the terms of his probation. The district court then heard arguments from the State and Volle concerning future disposition. The State urged the district court to revoke Volle's probation and impose the underlying prison sentences, specifically because Volle had committed a new crime and imposing an intermediate sanction would jeopardize public safety based on the violent nature of Volle's offense and the items found in his car.

Volle offered his military service and his struggles with posttraumatic stress disorder (PTSD) as mitigating factors. In support, Volle presented two witnesses who testified about PTSD in general and Volle's experience with a program designed to help veterans with PTSD. Stephanie said that she supported Volle getting help; that she did not know if he would get the help he needed in prison; and that when Volle was receiving treatment, going to meetings, and taking his medications, he did very well. Volle's probation officer recommended that Volle receive a 3-day quick dip, with time served, and be ordered to complete treatment. Volle also introduced his PTSD service dog to the court.

The district court began by recognizing Volle's military service, stating that it was grateful for all that Volle had done for his country. But the district court also told Volle: "I have to look at all of the evidence and I will. Because I know that part of that evidence is that, before you went to Iraq, you were trained by experts on how to kill people, that was part of your training." Based on this finding and noting that (1) several potentially dangerous and suspicious items had been found in Volle's car, (2) Volle had threatened to kill someone, (3) Volle had stopped taking his medications, (4) Volle had stopped going to meetings, and (5) it appeared Volle's service dog was not with him on the night he was arrested, the district court found that public safety would not be served by imposing an intermediate sanction. The district court also found that Volle had committed a new crime while on probation. After making these findings, the district court revoked Volle's probation and imposed the underlying prison sentences.

Volle timely appeals.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION BY REVOKING VOLLE'S PROBATION?

Volle claims the district court abused its discretion by imposing his underlying sentences instead of an intermediate sanction. Specifically, he claims the district court made a legal error by referencing Volle's military service and experience, which typically is considered a mitigating factor, when finding that public safety would be jeopardized by imposing an intermediate sanction. Volle contends that because of this error, the revocation of his probation and imposition of the underlying prison sentences was an abuse of the district court's discretion.

Probation is "'an act of grace by the sentencing judge and, unless otherwise required by law, is granted as a privilege and not as a matter of right.' [Citations omitted.]" *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). Once the State has proven that the offender committed a probation violation, "revocation is in the sound discretion of the district court." *State v. Walker*, 260 Kan. 803, 808, 926 P.2d 218 (1996). A court abuses its discretion if (1) no reasonable person would have taken the view adopted by the court; (2) the action was based on an error of law; or (3) the action was based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). The offender bears the burden of proving an abuse of discretion. *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

K.S.A. 2015 Supp. 22-3716(c) provides that before ordering an offender to serve his or her underlying prison sentence, the district court should generally impose an intermediate sanction. The district court, however, may revoke an offender's probation without imposing intermediate sanctions if it "finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the

4

welfare of the offender will not be served by such sanction." K.S.A. 2015 Supp. 22-3716(c)(9). Intermediate sanctions are also unnecessary if the offender committed a new felony, misdemeanor, or absconded from supervision while on probation. K.S.A. 2015 Supp. 22-3716(c)(8); see *State v. Brown*, 51 Kan. App. 2d 876, 885, 357 P.3d 296 (2015).

Citing cases involving sentencing issues from other jurisdictions, Volle claims that military service is generally regarded as a mitigating factor. See *Ploof v. State*, 75 A.3d 840, 855 (Del. 2013) (counsel reasonably concluded defendant's military service mitigating evidence); *Farmer v. State*, 772 N.E.2d 1025, 1027 (Ind. App. 2002) (defendant's military service mitigating factor), *abrogated on other grounds by Bethea v. State*, 983 N.E.2d 1134 (Ind. 2013). He also points out that the United States Supreme Court found that defense counsel's failure to introduce the defendant's military service as mitigating evidence in a death penalty case was sufficiently deficient, in part, to overturn a death sentence. See *Porter v. McCollum*, 558 U.S. 30, 43-44, 130 S. Ct. 447, 175 L. Ed. 2d 398 (2009); see also *Jackson v. Dugger*, 931 F.2d 712, 717 (11th Cir. 1991) ("We believe that Jackson's military service is in and of itself a significant mitigating circumstance."). Volle also notes that under Kansas law PTSD connected to military service is included in a nonexclusive list of mitigating factors that a district court may consider when deciding whether to impose a departure sentence. See K.S.A. 2015 Supp. 21-6815(c)(1)(F). According to Volle, while the district court was not required to impose an intermediate sanction because of his military service or his service-related PTSD, the district court was *precluded as a matter of law* from considering either of those factors as aggravating. Volle cites additional out-of-state authority in support of this proposition. See *Miller v. State*, 373 So. 2d 882, 885 (Fla. 1979) (impermissible for sentencing court to invoke defendant's mental illness, a mitigating factor, as aggravating factor in support of imposing the death penalty); *State v. Legendre*, 522 So. 2d 1249, 1252-53 (La. App. 1988) (impermissible for sentencing court to cite defendant's mental illness, a mitigating factor, to impose aggravated sentence).

5

The State sides-steps Volle's argument and contends that the use of aggravating and mitigating factors does not apply to probation revocation proceedings. It principally relies on our Supreme Court's opinion in *Abasolo v. State*, 284 Kan. 299, 305, 160 P.3d 471 (2007), which held that in the context of a district court's authority to impose a lesser sentence at a probation revocation hearing, K.S.A. 22-3716, the probation revocation statute, "does not impose any additional restrictions on the district court's discretion as to the sentence that may be imposed at the time of the probation violation hearing." The State's brief also cites to *State v. Ardry*, 295 Kan. 733, 736, 286 P.3d 207 (2012), in which our Supreme Court held that "[b]ecause a district court may impose a lesser sentence without stating a reason or even by mistake, a district court certainly does not need new or different mitigating factors in order to impose a lesser sentence." Instead, the State argues, citing K.S.A. 2015 Supp. 21-6815, mitigating and aggravating factors only apply to sentencing departures.

First, we are inclined to agree with the State that a district court is not hampered by the rigid consideration and weighing of permissible aggravating and mitigating factors in determining whether an offender's underlying sentence should be imposed upon revocation of probation because unlike the sentencing guidelines, which intend to ensure comparable sentences upon similarly situated defendants, district courts, subject to K.S.A. 22-3716, have unfettered discretion in probation revocations once a probation violation has been proven. 295 Kan. at 736; see also *State v. Hernandez*, No. 101,789, 2009 WL 4035560, at *1 (Kan. App. 2009) (unpublished opinion) (district court not required to consider whether mitigating factors outweigh offender's probation violations before revoking probation and imposing sentence).

However, we need not definitively answer this question because even if we accepted Volle's assertion that military service or service-related PTSD should never be considered as aggravating factors in probation revocation hearings, we note the district court's comments did not center on Volle's military service or that he now suffers from

6

PTSD as a result of that service but, rather, on his military training or skills, specifically that he had been "trained by experts on how to kill people." We approve of the approach adopted by one federal appeals court which held that there is a difference between a defendant's military service and the skills such defendant acquires during the course of a lifetime, including skills acquired in the military, and it is not always inconsistent to use the former in mitigation and the latter in aggravation. *United States v. Runyon*, 707 F.3d 475, 503 (4th Cir. 2013) (permissible for defendant to invoke his military service to mitigate his culpability; permissible for prosecution to argue defendant exploited skills acquired during such service to commit the crime).

Second, and perhaps more pertinent to Volle's real complaint, we hold that the district court's finding that his military training on "how to kill people" to support its conclusion that Volle constituted a public safety risk is unsupported by the record. In fact, the record is devoid of any facts that would tie Volle's military training to being a danger to the community. In the one instance where we did find a court utilized military training as an aggravating factor—again in the sentencing context—that court did so only because it could tie specific aspects of the defendant's military training to skills which would have enabled the defendant to commit the crime. *Runyon*, 707 F.3d at 503. The district court did not do that here. Instead, the district court made a broad and completely unsupported statement that Volle's military training, which taught him "how to kill," in conjunction with other facts, rendered him a public safety risk. While we presume the district judge here probably did not intend her comments to mean as they appear in the record, we must condemn them as unnecessarily slanderous against anyone who served in the military. See *Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988) (condemning prosecutor's statement in closing that United States Marines were trained to kill to point of enjoying it). It was error for the district court to include Volle's military training as a fact supporting its finding that Volle constituted a public safety risk.

7

Third, notwithstanding the district court's unfortunate comments about Volle's military training, the district court's other factual findings support its conclusion that Volle is a danger to public safety, rendering the district court's error harmless as to the ultimate result. See K.S.A. 2015 Supp. 60-261; *State v. Kennon*, No. 102,936, 2010 WL 3662890, at *2 (Kan. App. 2010) (unpublished opinion) (applying harmless error standard of K.S.A. 60-261 in probation revocation case). The district court's public safety findings noted that (1) several potentially dangerous and suspicious items had been found in Volle's car, (2) Volle had threatened to kill someone, (3) Volle had stopped taking his medications, (4) Volle had stopped going to meetings, and (5) it appeared Volle's service dog was not with him on the night he was arrested. Such facts considered without regard to Volle's military training are sufficient to support the district court's finding that public safety would not be served by imposing an intermediate sanction.

Moreover, the district court's decision to impose Volle's underlying prison sentence instead of an intermediate sanction is supported by its alternative finding that Volle had committed a new crime while on probation. As previously noted, the commission of a new crime is alone sufficient justification for a district court to order an offender to serve his or her underlying prison sentence without first imposing an intermediate sanction. K.S.A. 2015 Supp. 22-3716(c)(8). Evidence from the show cause hearing supports the finding that Volle committed the crime of criminal threat. As a result, the district court did not abuse its discretion in revoking Volle's probation and imposing the underlying prison sentences.

Affirmed.